A00A0147. HARPER v. THE STATE.
(534 SE2d 157)

SMITH, Presiding Judge.

Chris Marion Harper was convicted of driving under the influence of alcohol. Following denial of his motion for new trial, he appeals. He claims that the trial court erred by not excluding evidence of his sobriety tests because the tests were administered after he was placed under arrest but before he was advised of his *Miranda* rights. We find this contention to be without merit, and we affirm.

Early in the morning of September 21, 1996, Officer Stewart saw Harper driving west on Lindbergh Road in Atlanta. Harper made an illegal right turn onto Peachtree Road at a red light at the intersection of Lindbergh Road and Peachtree Road, and the officer pulled him over. Officer Stewart noticed that Harper's eyes were red, that his speech was slurred, and that there was a strong smell of alcohol coming from his vehicle. Suspecting Harper to be driving under the influence, Officer Stewart called for a DUI task force officer. In response, Officer Garrison arrived and led Harper through a series of field sobriety tests. Officer Garrison then informed Harper that he was under arrest, read him the implied consent notice, and took him into custody.

1. Harper claims that his detention had ripened into an arrest before Officer Garrison conducted the sobriety tests and that because he had not been previously read his *Miranda* rights, the tests were improper and should not have been admitted into evidence. We disagree.

OCGA § 24-9-20 (a) provides that no person who is charged with a crime can be compelled to give evidence against himself. Applying this statute, we have held that if an officer gives a field sobriety test to a person who is under arrest but who had not been warned of his

right against self-incrimination, then the test is inadmissible. See *State v. Warmack*, 230 Ga. App. 157, 158 (495 SE2d 632) (1998); *State v. O'Donnell*, 225 Ga. App. 502, 504 (2) (484 SE2d 313) (1997). Conversely, if an officer gives a field sobriety test to a person who is not under arrest, then the test is admissible even if the person had not been warned of his *Miranda* rights. See *Crum v. State*, 194 Ga. App. 271, 272 (390 SE2d 295) (1990).

The trial court found that Harper was placed in custody only after Officer Garrison completed his DUI investigation. "The issue of whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous. [Cit.]" *Johnson v. State*, 234 Ga. App. 116, 118 (2) (506 SE2d 234) (1998). "The test for determining whether a person is 'in custody' at a traffic stop is if a reasonable person in the suspect's position would have thought the detention would not be temporary. [Cit.]" *Hughes v. State*, 259 Ga. 227, 228 (1) (378 SE2d 853) (1989).

Harper emphasizes the length of time from the traffic stop to the arrival of the DUI task force officer and argues that because of the excessive delay, his detention ripened into an arrest. There is conflicting testimony concerning the time it took from the initial traffic stop until Officer Garrison arrived to conduct the investigation. Officer Stewart estimates the wait was only a few minutes while Harper testified that it was approximately a half-hour, and other evidence would support a finding that the delay lasted up to an hour. We have previously held that a wait of 45 to 50 minutes from the time of a traffic stop to the commencement of an investigative search of a car did not convert the investigation into a custodial situation. See *Aldridge v. State*, 237 Ga. App. 209, 213 (3) (515 SE2d 397) (1999). Here, Harper was allowed to walk around. He was not placed in the back of the police car, nor was he handcuffed. Officer Stewart told Harper that he had called for a DUI task force officer because he was under suspicion of DUI. And although Officer Stewart told Harper that he was not free to leave while they waited for the DUI task force to arrive, not every detention is an arrest. See *State v. Dible*, 232 Ga. App. 73, 74 (502 SE2d 245) (1998). Under these circumstances, a reasonable person could conclude that his freedom of action was only temporarily curtailed and that a final determination of his status was simply delayed. The trial court's finding that Harper was placed under arrest only after the field sobriety test is not clearly erroneous.

2. We need not consider Harper's remaining enumerations of error. Harper's first enumeration of error asks whether Harper's traffic stop ripened into an arrest. This is not a claim of error on the part of the trial court, but it is an issue in the analysis of the other enumerations of error.

In his third enumeration of error, Harper claims that his refusal to submit to the State-mandated chemical test should have been excluded from evidence because the implied consent notice was not read to him when he was arrested. This enumeration assumes that competent evidence of Harper's refusal to take the State-administered breath test was before the court, but that is not so. After the hearing on his motion in limine, Harper waived a jury trial, the solicitor and defense counsel stipulated that the evidence presented at the hearing would be deemed to be the evidence presented to the court, and no further evidence was presented. Although the solicitor stated that Officer Corroto would testify at trial that Harper refused a breath test, Corroto never testified at the hearing on Harper's motion in limine. In any event, Officer Garrison read Harper the implied consent notice immediately after arresting him. Harper's enumerations of error 1 and 3 are without merit.

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED APRIL 26, 2000.

*Robert A. Meier IV*, for appellant.

*Joseph J. Drolet*, Solicitor, *Shukura L. Ingram*, Assistant Solicitor, for appellee.