## A03A2117. DISHAROON v. THE STATE.
(589 SE2d 339)

ELLINGTON, Judge.

Following a bench trial, the State Court of Cherokee County convicted Sherry Disharoon of driving under the influence of alcohol while having an alcohol concentration of 0.08 or more, OCGA § 40-6-391 (a) (5); DUI, less safe, OCGA § 40-6-391 (a) (1), which merged with the per se violation; and speeding, OCGA §§ 40-6-181 (b); 40-6-183. Disharoon appeals, challenging the trial court's denial of her motion to suppress. Finding no error, we affirm.

> In reviewing [the] denial of a motion to suppress or in limine, we apply the following three principles[.] First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations, punctuation and emphasis omitted.) *Brittian v. State*, 257 Ga. App. 729-730 (572 SE2d 76) (2002). "The exclusion of evidence is an extreme sanction and one not favored in the law." (Citation omitted.) *Tew v. State*, 246 Ga. App. 270, 272 (1) (539 SE2d 579) (2000).

Viewed in the light most favorable to the trial court's ruling, the evidence showed that, just after midnight on October 5, 2002, a Cherokee County sheriff's deputy stopped Disharoon for speeding after observing her driving approximately 65 mph in a 45-mph zone. The officer discovered that Disharoon's driver's license had been suspended for insurance reasons. The officer determined that Disharoon's only passenger was not licensed to drive and asked whether Disharoon could call someone to get her car. Disharoon expressed doubts about this and said, "I can walk [home], if you don't mind, please, sir." The officer and Disharoon then had further conversation about her suspended license.

After writing up the speeding ticket, the officer asked Disharoon and her passenger to step out of the car. The officer patted Disharoon's passenger for weapons and told him to let himself into the unlocked patrol car. The officer told Disharoon that he had called a wrecker for her car and said, "I am going to give you guys a ride home, okay?" The officer then walked beside Disharoon to the rear of

the patrol car. Disharoon made no further comment about walking home or calling for a friend.

As Disharoon was getting into the patrol car, the officer for the first time smelled alcohol on Disharoon's breath. At that point, the officer administered field sobriety tests, which Disharoon failed. As a result, the officer placed her under arrest and transported her to the sheriff's office for chemical testing of her breath for alcohol.

At the hearing on Disharoon's motion to suppress, the officer testified to the facts as summarized above. The officer testified that until he smelled alcohol on Disharoon, she was free to leave. The officer also testified that he was not attempting to delay Disharoon's departure, but only to follow department policy to leave neither Disharoon nor her car abandoned on the side of the road. The trial court viewed the videotape of the stop and arrest. Disharoon presented no evidence. Disharoon argued that the officer illegally took her into custody at the moment he prevented her from walking home, as she requested, and instead insisted on giving her a ride home. Disharoon argued that she was entitled to be given *Miranda*[1] warnings before the officer conducted field sobriety and alcohol breath tests. The trial court concluded under the totality of the circumstances that a reasonable person would not have believed that Disharoon was in detention as the officer escorted her to his patrol car.

1. Disharoon contends the trial court erred in admitting the results of the field sobriety tests, arguing the results were inadmissible as having been seized during an illegal detention.

We note initially that results of field sobriety tests are not evidence of a testimonial or communicative nature and therefore do not constitute "statements" subject to the Fifth Amendment protections embodied by *Miranda*. *Gunn v. State*, 236 Ga. App. 901, 902 (1) (514 SE2d 77) (1999); *Turner v. State*, 233 Ga. App. 413, 414-415 (1) (a) (504 SE2d 229) (1998); *Buchnowski v. State*, 233 Ga. App. 766, 768 (2) (505 SE2d 263) (1998). We must consider, though, whether the information yielded in the tests was gathered in violation of Disharoon's Fourth Amendment right to be free of unlawful searches and seizures. Evidence obtained in violation of the Fourth Amendment may be excluded where doing so will further the purpose of the judicially created exclusionary rule: to deter government violations of the constitution. *Tew v. State*, 246 Ga. App. at 272 (1).

Viewed in the light most favorable to the trial court's denial of Disharoon's motion, the record shows that the interaction between Disharoon and the officer shifted among the recognized levels of

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

police-citizen encounters: "verbal communications involving no coercion or detention; brief stops or seizures that must be accompanied by reasonable suspicion of criminal activity; and arrests, which must be supported by probable cause." (Citation omitted.) *State v. Underwood*, 257 Ga. App. 893, 894-895 (572 SE2d 394) (2002). Because the officer personally observed Disharoon committing a traffic offense, namely speeding, he had probable cause to stop her car. *Fuller v. State*, 256 Ga. App. 840, 842 (1) (570 SE2d 43) (2002). Thus, the police-citizen encounter in this case began at the third tier, as a valid traffic stop supported by probable cause. Id. Generally, such a traffic stop ends when the officer finishes responding to the traffic violation, whether by issuing a verbal warning, a written warning, a traffic citation, or otherwise, and releases the motorist to go on her way. *Padron v. State*, 254 Ga. App. 265, 269 (1) (562 SE2d 244) (2002); *Simmons v. State*, 223 Ga. App. 781, 783 (2) (479 SE2d 123) (1996). When determining whether a traffic stop had been completed such that any further police-citizen contact will be deemed consensual, courts must consider the totality of the circumstances. *Ohio v. Robinette*, 519 U. S. 33, 36-40 (117 SC 417, 136 LE2d 347) (1996). For example, a traffic stop may be deemed completed, even if the officer does not explicitly tell the motorist she is free to go. Id.[2] And a traffic stop may be deemed completed even if the officer prohibits the motorist from driving away. See *People v. Thomas*, 839 P2d 1174 (Colo. 1992) (traffic stop of motorist was completed when officer issued tickets, retained suspended license, and then told motorist he was free to go but could not drive). Under the totality of the circumstances, the initial traffic stop in this case ended when the officer finished writing the ticket and turned his attention to getting Disharoon safely home.

After the officer finished writing the ticket, the interaction dropped to the level of a consensual police-citizen encounter or, at most, a first-tier investigative stop.[3] At that point, Disharoon was a

---

[2] See also cases cited in LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 9.3, n. 105 (1996 and 2003 Supp.).

[3] See *Terry v. Ohio*, 392 U. S. 1, 13-14 (88 SC 1868, 20 LE2d 889) (1968) (contrasting "wholly friendly exchanges [between citizens and police officers] of pleasantries or mutually useful information" with investigative stops, detentions and arrests); *Smith v. State*, 262 Ga. App. 614, 617 (2) (585 SE2d 888) (2003) (a third-tier "arrest" within the meaning of the Fifth Amendment occurs when a reasonable person would have felt so restrained by an officer's actions as to equate with formal arrest); *Stokes v. State*, 238 Ga. App. 230, 232 (518 SE2d 447) (1999) (a second-tier "seizure" within the meaning of the Fourth Amendment occurs "when, in view of all the circumstances surrounding the incident, a reasonable person believes that he is not free to leave") (citation omitted). Cf. *State v. Sims*, 248 Ga. App. 277, 278 (546 SE2d 47) (2001) (the trial court was authorized to find that motorist was still detained where, after the motorist signed citations for speeding and no insurance, officer kept the motorist's driver's license, because it was suspended, and towed his car, because there was no insurance, and then questioned the motorist about the contents of his car and asked for consent to search it).

motorist stranded on the side of the road after midnight, with no identifiable source of shelter or assistance. The officer's focus shifted from enforcing the traffic laws to discharging his duty of protecting a person who was in a vulnerable situation. It is undisputed that in the process of preparing to place Disharoon in the patrol car, the officer was not engaged in any form of criminal investigation.[4] Disharoon's precarious situation was a result of law enforcement action, and the officer was understandably concerned about exposing the county to potential liability[5] if he abandoned her on the side of the road. Although the officer did not respond to Disharoon's proposal that she walk home, there was no evidence presented that, at the time he walked Disharoon to the rear of the patrol car, he spoke to her in a threatening or coercive manner, made any show of authority or physical force, or threatened her with arrest if she walked away. See *State v. Underwood*, 257 Ga. App. at 895; *Stokes v. State*, 238 Ga. App. at 231-232.[6] For her part, Disharoon did not repeat her preference for walking home or take any other steps after the officer wrote the speeding ticket to leave the scene of the traffic stop, such as asking to use a telephone to call for a ride. Instead, Disharoon by her silence acquiesced in the officer's offer to drive her home. See *State v. Baur*, 86 Wash. App. 1021 (1997) (offering a motorist a ride home is within the scope of the officer's "community caretaking function" and is a friendly, consensual encounter, not a Fourth Amendment "seizure").

Once the officer smelled alcohol on Disharoon, he had reasonable suspicion Disharoon had committed another crime, DUI, and the encounter properly evolved into a second-tier investigative encounter comparable to a *Terry* stop.[7] *Keilholtz v. State*, 261 Ga. App. 1, 4 (581 SE2d 660) (2003); *Davis v. State*, 232 Ga. App. 320, 321-322 (501 SE2d 836) (1998). An officer's reasonable articulable suspicion that a motorist is intoxicated provides a legally sufficient basis for adminis-

---

[4] See Daniel's Criminal Trial Practice, § 3-11 (2002 ed.).

[5] See *City of Rome v. Jordan*, 263 Ga. 26, 28-29 (1) (426 SE2d 861) (1993) ("where there is a *special relationship* between the individual and the municipality which sets the individual apart from the general public and engenders a *special duty* owed to that individual, the municipality may be subject to liability for the nonfeasance of its police department") (footnote omitted; emphasis in original); *Feise v. Cherokee County*, 209 Ga. App. 733 (434 SE2d 551) (1993) (applied to counties). See also *DeShaney v. Winnebago County Dept. of Social Svcs.*, 489 U. S. 189, 199-200 (109 SC 998, 103 LE2d 249) (1989) (law enforcement has an affirmative duty to protect an individual where state action has limited the individual's freedom to act on his own behalf and thus his ability to protect himself); Police Civil Liability, §§ 9.04, 9.05, 9.07, 9.16 [1] [c] [v-viii] (2003).

[6] See also LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 9.3 (a) (1996).

[7] See *Brown v. State*, 188 Ga. App. 184, 187 (372 SE2d 514) (1988) (investigative stops of motorists are analogous to *Terry* stops).

tering field sobriety tests. *Smith v. State*, 236 Ga. App. 548, 551 (2) (512 SE2d 19) (1999).

After Disharoon failed the field sobriety test, the officer had probable cause to arrest Disharoon for DUI. *Campbell v. State*, 221 Ga. App. 105, 107 (2) (470 SE2d 503) (1996). When the officer formally arrested Disharoon, the encounter returned to the third tier. *State v. Underwood*, 257 Ga. App. at 894-895.

To summarize, the officer in this case acquired reasonable articulable suspicion that Disharoon was driving under the influence during a consensual or first-tier encounter involving no coercion, detention, or investigation. Such encounters " 'never intrude[ ] upon any constitutionally protected interest.' "[8] When during the course of such an encounter, an officer acquires reasonable suspicion of criminal conduct, the officer may proceed with appropriate additional investigation. *Terry v. Ohio*, 392 U. S. 1, 13-14 (88 SC 1868, 20 LE2d 889) (1968).[9] Under the circumstances, the results of Disharoon's field sobriety tests were not obtained in violation of her Fourth Amendment rights. *Stokes v. State*, 238 Ga. App. 230, 231-232 (518 SE2d 447) (1999). Accordingly, the trial court did not abuse its discretion in admitting the evidence.

2. Disharoon contends the trial court erred in admitting the results of the chemical test for blood alcohol, arguing the testing was tainted by the earlier detention. But because, as we held in Division 1, Disharoon suffered no constitutional violation in connection with the field sobriety testing which gave rise to the probable cause, the exclusionary rule does not require suppression of the results of the chemical testing which followed. *Casey v. State*, 246 Ga. App. 786, 791 (4) (542 SE2d 531) (2000); *Tew v. State*, 246 Ga. App. at 272-273 (1).

*Judgment affirmed. Phipps, J., concurs. Blackburn, P. J., concurs in the judgment only.*

DECIDED OCTOBER 24, 2003.

*Joe W. Hendricks, Jr., Mathew A. Baker*, for appellant.

---

[8] *State v. Underwood*, 257 Ga. App. at 894-895:
The first type of [police-citizen] encounter never intrudes upon any constitutionally protected interest since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens.
(Citation and punctuation omitted.)

[9] See *State v. Harris*, 261 Ga. App. 119, 122 (581 SE2d 736) (2003) ("[A] second-tier stop is subject to strict boundaries regarding duration, intent, and scope. Such investigative stop should be brief, limited in time to that minimally necessary to investigate the allegation invoking suspicion.") (punctuation and footnotes omitted).

*David L. Cannon, Jr., Solicitor-General, Lawrence A. Silverman, Assistant Solicitor-General,* for appellee.