A03A2457. THE STATE v. PIERCE.

(596 SE2d 725)

ADAMS, Judge.

The State of Georgia appeals from the trial court's order granting Justin Pierce's motion to suppress evidence and statements obtained at the time of his arrest for speeding, in violation of OCGA § 40-6-181, and driving under the influence, in violation of OCGA § 40-6-391 (a) (1) and (a) (5).

On March 27, 2002 at approximately 11:30 p.m., Officer Acevedo of the Gwinnett County Police Department observed Pierce's car traveling at a high rate of speed on Interstate 85 while making multiple lane changes. Acevedo paced the car at between 102 and 108 mph in a 65 mph zone. Although the officer testified that the speedometer in his patrol car had been regularly checked, he did not produce "any evidence of calibration" at the hearing on the motion to suppress.

Acevedo pulled the car over. When he asked Pierce for his driver's license, he detected an odor of alcohol, which he believed was coming from Pierce's breath. At this point, the officer asked Pierce to step out and move to the rear of his car. Acevedo then radioed dispatch to send a DUI task force unit to the scene. Officer David O'Hare with the Gwinnett County DUI Task Force responded to the call.

When O'Hare arrived at the scene, Pierce was standing outside his car and admitted that he had been driving "about 100." Pierce had explained to Acevedo that he was responding to an emergency call from his girlfriend saying that she was having a problem with her ex-husband harassing her. O'Hare observed that Pierce's eyes were watery and detected a moderate odor of alcohol. Pierce admitted that he had had "a couple of drinks," explaining that he meant two to three beers. Pierce's face appeared flushed.

O'Hare then walked away from Pierce toward Pierce's open car door, saying, "I'm just going to shut your car door so some other drunk doesn't take it off." After asking Pierce his age, O'Hare left him standing alone at the back of his car, stating, "Just hang tight with your car. We'll be with you in a minute." O'Hare then had a brief conversation with Acevedo, who was standing some distance away. When O'Hare returned to Pierce, he asked him to take some field

sobriety tests to "make sure you are safe to drive." He then admonished Pierce, "And safe to drive does not mean safe at 100 miles per hour. Keep that in mind."

O'Hare administered the horizontal gaze nystagmus test, the walk-and-turn test, the one-leg stand test, and an alco-sensor test. He testified that he had to explain the instructions to the tests several times before Pierce seemed to understand. Based upon his observations from these tests, O'Hare formally placed Pierce under arrest.

The state contends that the trial court erred in suppressing evidence obtained during this traffic stop. Generally, our review of a trial court's ruling on a motion to suppress is guided by three principles:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and *credibility* must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation and punctuation omitted.) *Tate v. State*, 264 Ga. 53, 54 (440 SE2d 646) (1994). But to the extent that the facts relevant to the trial court's ruling are undisputed, this Court's application of the law to the undisputed facts is de novo. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

1. The state first argues that the trial court erred in granting Pierce's motion to suppress the results of the field sobriety tests and certain statements due to a lack of a *Miranda* warning. The trial court agreed with Pierce's argument that he was in custody after O'Hare told him he was going to shut the car door before "some other drunk" took it off. Because the officers failed to issue a *Miranda* warning after this statement, the trial court suppressed all field sobriety evaluations and all statements made in response to the officer after the field sobriety evaluations began.[1]

---

[1] In addition to arguing that a *Miranda* violation occurred, Pierce cited OCGA § 24-9-20 in support of his motion to suppress. Under this provision "an arrestee must be warned of his right against self-incrimination" before being asked to take field sobriety tests. *State v. O'Donnell*, 225 Ga. App. 502, 505 (2) (484 SE2d 313) (1997).

"As a general rule, *Miranda* warnings are not required while an investigating officer conducts preliminary questioning or field sobriety tests; however, *after* a DUI suspect is arrested, *Miranda* warnings must precede further field sobriety tests in order for evidence of the results to be admissible." (Citation omitted.) *Polizzotto v. State*, 248 Ga. App. 814, 816 (1) (547 SE2d 390) (2001). And "the test for determining whether a person is under arrest at a traffic stop is whether a reasonable person in the suspect's position would have thought his detention would not be temporary." (Punctuation and footnote omitted.) *Carthon v. State*, 248 Ga. App. 738, 741 (1) (548 SE2d 649) (2001). We must examine all the surrounding circumstances in applying this test. *Turner v. State*, 233 Ga. App. 413, 415 (1) (504 SE2d 229) (1998).

The facts in connection with this issue are undisputed. Pierce was detained outside his car while Acevedo summoned an officer from the DUI task force. When Officer O'Hare arrived, he asked a few preliminary questions, then walked over to close Pierce's car door explaining that he was doing so before "some other drunk took it off." O'Hare then walked away, leaving Pierce standing behind his car while he talked to Acevedo. When he returned to Pierce, O'Hare said he wanted to administer some field sobriety tests to make sure that Pierce was safe to drive.

It is well settled that an officer has a right to detain an individual briefly to conduct an investigation at a traffic stop and that such a detention does not normally trigger the protections of *Miranda*. See *State v. Wintker*, 223 Ga. App. 65, 67 (476 SE2d 835) (1996). Further, a custodial situation does not arise even if an officer believes he has probable cause to arrest a defendant, where the officer takes no overt step to communicate that belief:

> Absent the officer making any statement that would cause a reasonable person to believe that [he] was under arrest and not temporarily detained during an investigation, the officer's "belief" that probable cause exists to make an arrest does not determine when the arrest is effectuated until the officer overtly acts so that a reasonable person would believe [he] was under arrest.

*Lyons v. State*, 244 Ga. App. 658, 664 (2) (535 SE2d 841) (2000).

Here, the trial court ruled that O'Hare's statement regarding "some other drunk indicates that the officer had already made the decision that he was going to arrest [Pierce] and that was communicated to [Pierce]." But this statement must be viewed in context. While O'Hare was making this statement, he walked away from Pierce to close the car door. He then turned and walked in the opposite

direction and away from Pierce to speak with Acevedo. Pierce was left standing alone behind his car. When O'Hare returned a short time later, he told Pierce that he wanted to administer field sobriety tests to make sure he was safe to drive, and admonished him that that did not mean continuing to drive at 100 mph. We find that when all the surrounding circumstances are considered, O'Hare's off-hand comment, though ill-advised, was insufficient to cause a reasonable person to believe that his detention would not be temporary. See *Harper v. State*, 243 Ga. App. 705, 706 (1) (534 SE2d 157) (2000).

In the *Harper* case, the defendant was stopped after one officer observed him making an illegal turn. After detecting the odor of alcohol and observing that Harper's eyes were red and his speech was slurred, the officer summoned the DUI task force. While awaiting the task force officer, the defendant was allowed to walk around. The officer told Harper that the task force officer had been summoned because he was under suspicion of driving under the influence and further that he was not free to leave while they waited for the officer to arrive. This Court held that "[u]nder these circumstances, a reasonable person [w]ould conclude that his freedom of action was only temporarily curtailed and that a final determination of his status was simply delayed." Id. at 706 (1). Similarly, under the circumstances in this case, we find that a reasonable person would have concluded that although the officer may have suspected that the defendant was intoxicated, he was administering the field sobriety tests before making a final determination.

Moreover, we find that this case is distinguishable from the facts presented in *Price v. State*, 269 Ga. 222 (498 SE2d 262) (1998), upon which the trial court relied. There the officer told the defendant that his license check had revealed that she had a suspended license, that he had a strong impression that she was intoxicated based upon the smell of alcohol, and that "he would take her to jail for DUI regardless of whether she performed the field evaluations." Id. at 225 (3). The Supreme Court stated that "[u]nder these circumstances . . . , *having been informed that she was going to jail*, a reasonable person would have believed that the detention was not temporary." (Emphasis supplied.) Id. Here, far from indicating that the tests were irrelevant, O'Hare stated that the results of the field sobriety tests would determine Pierce's status.

Accordingly, we find that the trial court erred in excluding the evidence of the field sobriety tests and responsive statements on the basis of a *Miranda* violation.

2. The state next argues that the trial court erred in excluding the results of the horizontal gaze nystagmus test based upon O'Hare's testimony. The trial court suppressed the results of the HGN evaluation "due to improper administration of the test which the officer

stated would compromise the results." The state argues that this was error because Pierce failed to present evidence showing how the improper administration would affect the results. Moreover, the state asserts that any problem with the administration of the test goes to the weight of the evidence and not to its admissibility.

This Court has held "that the HGN test is an accepted, common procedure that has reached a state of verifiable certainty in the scientific community and is admissible as a basis upon which an officer can determine that a driver was impaired by alcohol." *Hawkins v. State*, 223 Ga. App. 34, 38 (1) (476 SE2d 803) (1996). Nevertheless, a defendant may challenge by "timely motion or objection at trial" the method by which the HGN test is administered. Id. But the *Hawkins* opinion cautions that a challenge to the administration of the test is not the same as a challenge to the foundation for admission of the tests. Id. Rather, such a challenge goes to the weight of the evidence and not its admissibility:

> Clearly HGN testing, although far from a complex procedure, may be subject to human error in its administration or interpretation; however, such potential for error does not impact on the validity of the HGN test; no procedures are infallible. An accused may always introduce evidence of the possibility of error. . . . Such evidence would relate to the weight rather than the admissibility. . . ."

(Citations and punctuation omitted.) Id. Moreover, the defendant bears the burden of showing any error in the administration of the test. Id.

Here, Pierce presented evidence that the HGN test had not been properly administered through his counsel's cross-examination of O'Hare. The officer admitted that he failed to ask Pierce certain qualifying questions before administering the field sobriety tests although it is his practice now, after further training, to ask such questions. O'Hare also conceded that during the HGN test, he failed to make the requisite number of passes in observing Pierce and failed to hold his observation for the recommended time period. He also agreed with defense counsel that it should take over one minute to administer the test, but his test on Pierce took only 35 to 36 seconds. He agreed that he had not performed the test properly. O'Hare further acknowledged that the training manual provides that if any element of the standardized field sobriety test is changed, the validity of the test is compromised. He admitted that he currently trains those in his charge to perform the tests exactly as prescribed because otherwise, the results can be compromised.

But this evidence does not mandate the exclusion of the HGN test results. Rather, it goes to the weight and not the admissibility of the test. See *Lattarulo v. State*, 261 Ga. 124, 126 (3) (401 SE2d 516) (1991); *Cann-Hanson v. State*, 223 Ga. App. 690, 691 (1) (478 SE2d 460) (1996). Accordingly, the trial court erred in excluding the results of the HGN evaluation.

3. The state also asserts that the trial court erred in granting Pierce's motion to suppress and motion in limine on the ground that the officer lacked probable cause to arrest him for DUI. This ruling was necessarily premised on the trial court's exclusion of the results of the field sobriety tests and Pierce's statements after O'Hare began administering the tests. Given our ruling in Divisions 1 and 2 above and our review of the record, we find that the evidence supports a finding that O'Hare had probable cause to arrest Pierce for DUI, and thus the trial court erred in granting the motions. See *Disharoon v. State*, 263 Ga. App. 787 (589 SE2d 339) (2003); *Dougherty v. State*, 259 Ga. App. 618 (578 SE2d 256) (2003).

*Judgment reversed. Andrews, P. J., and Barnes, J., concur.*

DECIDED MARCH 12, 2004 — 

*Gerald N. Blaney, Jr., Solicitor-General, Gary S. Vey, Jeffrey P. Kwiatkowski, Jennifer L. White, Assistant Solicitors-General*, for appellant.

*Head, Thomas, Webb & Willis, Gregory A. Willis*, for appellee.

A03A2477. VANN v. THE STATE.
(596 SE2d 722)

SMITH, Chief Judge.

Gregory Alfredo Vann was convicted of two counts of armed robbery, two counts of possession of a firearm during the commission of a crime, two counts of possession of a firearm by a convicted felon, and one count of aggravated assault. His motion for new trial, as amended, was denied. Vann appeals, contending that he was denied effective assistance of counsel. For the reasons that follow, we agree with Vann that trial counsel was ineffective for failure to move to sever the charges of possession of a firearm by a convicted felon. We therefore reverse the lower court's denial of Vann's motion for new trial.

This case arises out of two armed robberies, which occurred on July 21 and August 11, 1999. The victim of the first robbery testified