A07A0660. TUNE v. THE STATE.
(648 SE2d 423)

MIKELL, Judge.

Deborah Tune was accused of driving under the influence of alcohol (DUI) to the extent it was less safe for her to drive, OCGA § 40-6-391 (a) (1), driving with an unlawful alcohol concentration, OCGA § 40-6-391 (a) (5), and driving on the wrong side of the road, OCGA § 40-6-40. After denying Tune's motion to suppress, the trial court conducted a bench trial at which it found Tune guilty of the DUI charges based on stipulated evidence; she pled guilty to driving on the wrong side of the road. Tune appeals her conviction, contending that the trial court erred in denying her motion to suppress. Finding no error in the court's denial of the motion, we affirm.

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[1]

---

[1] (Footnote omitted.) *Veal v. State*, 273 Ga. App. 47, 47-48 (614 SE2d 143) (2005). See also *State v. Pierce*, 266 Ga. App. 233, 234 (596 SE2d 725) (2004).

So viewed, the evidence adduced at the hearing on the motion to suppress/motion in limine shows that at approximately 1:40 a.m. on June 1, 2004, Officer Bradley Forrester of the Mt. Zion Police Department was traveling north on Highway 27 en route to meet a fellow officer for dinner in Bremen when he noticed a vehicle pulling a Wave Runner driving on the wrong side of the road. Forrester sped up, blocked the southbound lane and diverted the vehicle into the parking lot of a gas station. As Forrester approached the vehicle he detected an odor of alcohol and noticed that Tune was acting very nervous; that she was shaking; that she kept looking down and would not look Forrester in the eye; and that her eyes were watery and bloodshot. After making these observations, Forrester contacted the Bremen Police Department and requested that a Bremen officer be sent to the scene. By the time Officer David Coy of the Bremen Police Department arrived on the scene, Tune was standing outside her vehicle.

Coy administered an alco-sensor test and advised Tune that she was drunk. Coy told Forrester he would not arrest Tune because he had not stopped her. Forrester then summoned Sergeant Truitt of the Bremen Police Department. When he arrived, Truitt said that he would arrest Tune, but Forrester stated that he had called someone from Carroll County. When Carroll County Sheriff's Deputy Andrew Lee Richie arrived, Forrester advised him that he had stopped Tune for driving on the wrong side of the road and that she had been drinking alcohol. Richie noticed that Tune was unsteady on her feet, was acting nervous, and smelled strongly of alcohol. He asked Tune whether she had been drinking, and Tune replied that she had drunk something two or three hours ago in Birmingham. Richie then administered field sobriety tests.

Tune failed the horizontal gaze nystagmus test, and she lost her balance while Richie was giving her instructions for the walk and turn and then she stopped mid-test after walking twenty-two steps instead of nine. Richie administered a second alco-sensor test, which indicated the presence of alcohol. Based on his knowledge, training, experience, and observations, Richie determined that Tune was under the influence of alcohol to the extent that she was a less safe driver. Richie placed Tune under arrest, read her the implied consent warnings, and transported her to the sheriff's office, where Tune underwent a breath test. Richie performed the test on the Intoxilyzer 5000. He obtained two breath samples from Tune; the results were 0.107 and 0.116. Tune did not testify at the motion hearing. The trial court denied Tune's motion to suppress the results of the field sobriety tests and the state-administered breath test, without explanation. After construing all the evidence in favor of the trial court's findings, we affirm.

1. Tune has combined two errors in her first enumeration. For purposes of clarity, we have separated those contentions.

(a) Tune contends that the trial court erred by denying her motion to suppress because Richie did not have probable cause to arrest her for DUI independent of the field sobriety tests. The trial court obviously found otherwise, and we agree.

> The probable cause needed to conduct an arrest for DUI requires that the officer have knowledge or reasonably trustworthy information that a suspect was actually in physical [custody] of a moving vehicle, while under the influence of alcohol . . . [that] renders [her] incapable of driving safely.[2]

Here, Richie testified that when he arrived on the scene, he was advised by a fellow officer that Tune had been stopped for driving on the wrong side of the road and that she had been drinking. Prior to administering any field sobriety tests, Richie noticed that Tune was unsteady on her feet, was acting nervous, and smelled strongly of alcohol. Tune also admitted to Richie that she had consumed alcoholic beverages two or three hours before. In light of the information Richie was given by Forrester and his own observations of Tune, we cannot say that the trial court erred by denying Tune's motion to suppress.[3]

(b) Tune next contends that the trial court erred in denying her motion to suppress because she was in custody before Richie's arrival and therefore should have been read her *Miranda* rights. Here, Tune claims that she was within earshot when Officers Forrester, Coy, and Truitt discussed arresting her. Tune does not challenge the length of time from the traffic stop to Richie's arrival.

A temporary detention, incident to a traffic stop or "general on-the-scene investigation," does not normally trigger the protections of *Miranda*.[4] Moreover,

> a custodial situation does not arise even if an officer believes he has probable cause to arrest a defendant, where the officer takes no overt step to communicate that belief: Absent the officer making any statement that would cause a reasonable person to believe that [she] was under arrest and

---

[2] (Punctuation and footnote omitted.) *State v. Sanders*, 274 Ga. App. 393, 396 (617 SE2d 633) (2005).

[3] See, e.g., *Cann-Hanson v. State*, 223 Ga. App. 690, 691 (1) (478 SE2d 460) (1996) (in the absence of field sobriety tests, officer's observation that defendant had bloodshot, watery eyes and exuded an odor of alcohol was sufficient in itself to show probable cause to arrest him for driving under the influence).

[4] See *Pierce*, supra at 235 (1); *State v. Wintker*, 223 Ga. App. 65, 67 (476 SE2d 835) (1996).

not temporarily detained during an investigation, the officer's "belief" that probable cause exists to make an arrest does not determine when the arrest is effectuated until the officer overtly acts so that a reasonable person would believe [she] was under arrest.[5]

The issue of whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and we will not disturb the trial court's determination unless it is clearly erroneous.[6] "The test for determining whether a person is 'in custody' at a traffic stop is if a reasonable person in the suspect's position would have thought the detention would not be temporary."[7]

Tune argues that she heard the officers discussing her impending arrest; however, she did not testify at the hearing. Her contention is based on Forrester's testimony that the officers were standing next to the Wave Runner during the discussions, which testimony was followed by Richie's testimony that Tune was standing next to the Wave Runner when he arrived on the scene. The trial court was not required to infer from this evidence that Tune necessarily heard the officers' discussions. Though the officers testified that they discussed Tune's arrest, there is no evidence that the officers communicated to Tune their intent to arrest her.[8] Tune knew she was being investigated for DUI, and had been told that she was drunk; however, she was not placed in the back of a patrol car nor was she handcuffed. "Under these circumstances, a reasonable person could conclude that [her] freedom of action was only temporarily curtailed and that a final determination of [her] status was simply delayed."[9] The trial court's finding that Tune was placed under arrest only after Richie conducted the field sobriety tests is not clearly erroneous.[10]

2. Tune contends that the implied consent warning was untimely because, as previously alleged, she was in custody long before it was given. Given our holding in Division 1 (b), that Tune was not "in custody" for purposes of *Miranda* before Richie arrived on the scene, this enumeration is without merit.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

---

[5] (Citation omitted.) *Pierce*, supra.

[6] See *Abrahamson v. State*, 276 Ga. App. 584, 586 (623 SE2d 764) (2005), citing *Harper v. State*, 243 Ga. App. 705, 706 (1) (534 SE2d 157) (2000).

[7] *Abrahamson*, supra, citing *Harper*, supra.

[8] See, e.g., *State v. Dixon*, 267 Ga. App. 320, 321 (599 SE2d 284) (2004).

[9] *Harper*, supra. See also *Abrahamson*, supra; *Pierce*, supra at 236.

[10] Compare *State v. Picot*, 255 Ga. App. 513, 515 (2) (565 SE2d 865) (2002) (reversing grant of motion to suppress where defendant was pulled over by one officer, arrested by a second officer, and neither officer indicated that their involvement was anything more than a brief investigatory stop).

DECIDED JUNE 20, 2007.

*Allen M. Trapp, Jr.*, for appellant.
*Stephen J. Tuggle, Solicitor-General*, for appellee.