## A11A1724. THE STATE v. HAMMOND.
### (723 SE2d 89)

DILLARD, Judge.

Walter Hammond was indicted for various offenses related to an incident in which he was stopped by a police officer and found to possess crack cocaine. Hammond filed a motion to suppress this evidence and, following a hearing on the motion, the trial court granted same. This appeal by the State follows, in which the State contends that the trial court improperly granted Hammond's motion. For the reasons set forth infra, we reverse.

Our story begins with Hammond riding his bicycle through downtown Atlanta close to midnight, in an area known for drug activity. A police officer observed Hammond traveling in the wrong direction down a one-way street and riding without a headlight in violation of OCGA § 40-6-296. Accordingly, the officer stopped Hammond to inquire about the headlight and his direction of travel, and to request identification.

When questioned for identification, Hammond responded that he did not have an identification card but provided the officer with his name and date of birth. The officer then asked for Hammond's age, to which he responded that he was 52; however, according to the date of birth provided, Hammond was actually 53. According to the officer, this discrepancy raised a red flag. Additionally, he observed that Hammond was abnormally nervous and "fiddling" with something in his pocket, and thus, he believed that Hammond was under the influence of drugs. The officer thereafter ran Hammond's name and date of birth through the system in his patrol car, checking for any outstanding warrants.

Finding no outstanding warrants, but having no picture with which to confirm Hammond's identity, the officer returned to Hammond and immediately asked whether he was in possession of anything that the officer "needed to know about." The officer explained that he would not arrest Hammond if he merely had a crack pipe because "everybody out here has a crack pipe." Hammond

responded that he did have a crack pipe and handed it over to the officer. The officer then asked Hammond if he was in possession of crack, and Hammond hesitated before responding in the affirmative.

Upon hearing this, the officer told Hammond that the two of them were "going to talk about this, but I have to detain you right now," and he attempted to place Hammond in handcuffs. As this transpired, Hammond reached into his pocket and discarded a pill bottle containing what was later shown to be eight pieces of crack cocaine before grabbing for the officer's gun and struggling. The scuffle between the officer and Hammond escalated and continued until backup arrived, when Hammond was finally subdued and fully handcuffed.

Hammond was thereafter indicted on one count each of obstruction of an officer,[1] removal of a weapon,[2] possession of cocaine,[3] improperly riding a bicycle,[4] improperly equipping a bicycle,[5] and abandonment of a controlled substance.[6] He then filed a motion to suppress "all evidence resulting from the police officers' search and seizure . . . ." The trial court granted Hammond's motion, basing its decision on Hammond's claim that he was "in custody" when questioned as to whether he possessed illegal drugs but that he had not been read his *Miranda* rights. Accordingly, the trial court determined that "any admissions made should be suppressed" and that evidence obtained as a result of the statements should be suppressed as "fruits of the poisonous tree."[7] The trial judge more fully explained his decision at the motion-to-suppress hearing, opining that Hammond was subjected to a lawful tier-two *Terry* stop with regard to the violations related to his bicycle. However, because the arresting officer testified that Hammond was not free to leave after being approached, the trial court held that the officer had "no right to ask him any questions unless he's advised him of his *Miranda* warnings . . . ." This appeal by the State follows.

At the outset, we note that "on a motion to suppress, the State

---

[1] *See* OCGA § 16-10-24 (b).
[2] *See* OCGA § 16-10-33 (b).
[3] *See* OCGA § 16-13-30 (a).
[4] *See* OCGA § 40-6-294 (f).
[5] *See* OCGA § 40-6-296 (a).
[6] *See* OCGA § 16-13-3.
[7] We note that "[t]he 'fruit of the poisonous tree' doctrine provides that any evidence acquired by the police through exploitation of information obtained by means of unlawful conduct is inadmissible in a criminal prosecution." *Lawson v. State*, 299 Ga. App. 865, 868 (1) (684 SE2d 1) (2009); *see also Brown v. Illinois*, 422 U. S. 590, 603-04 (III) (95 SC 2254, 45 LE2d 416) (1975) (providing test to determine whether evidence must be excluded under doctrine).

has the burden of proving that a search was lawful."[8] And on appellate review of a trial court's order concerning a motion to suppress evidence, "while we review de novo the trial court's application of the law to undisputed facts, we must accept the trial court's ruling on disputed facts unless it is clearly erroneous."[9] With these guiding principles in mind, we turn now to the State's argument.

The State's sole argument on appeal is that the trial court improperly granted Hammond's motion to suppress by determining that Hammond was in custody without the benefit of *Miranda* warnings, rendering inadmissible statements he made and evidence found as a result of those statements. More specifically, the State contends that "the fact that Hammond had become the focus of an investigation during a roadside traffic stop, even to the point where the officer had probable cause for an arrest, did not constitute a formal arrest requiring *Miranda* warnings before questioning." We agree.

To begin with, we note that there are three tiers of *Terry*-type police-citizen encounters, which encompass

(1) communication between police and citizens involving no coercion or detention . . . , (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause.[10]

In a first-tier encounter, an officer "may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave."[11] In a second-tier encounter, even without probable cause, an officer may stop and detain a person briefly "when the officer has a particularized and objective basis for suspecting the person[ ] [is] involved in criminal activity."[12] But "the officer must possess more than a subjective, unparticularized suspicion or hunch," and his or her "action must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."[13] Additionally, in a second-tier encounter, "the officer must have some basis from

---

[8] *State v. Austin*, 310 Ga. App. 814, 816 (714 SE2d 671) (2011); *see also* OCGA § 17-5-30 (b).

[9] *State v. Mohammed*, 304 Ga. App. 230, 230 (695 SE2d 721) (2010).

[10] *Gonzalez v. State*, 235 Ga. App. 253, 254 (509 SE2d 144) (1998) (punctuation omitted).

[11] *Lucas v. State*, 284 Ga. App. 450, 452 (644 SE2d 302) (2007) (punctuation omitted).

[12] *Black v. State*, 281 Ga. App. 40, 43 (1) (635 SE2d 568) (2006) (punctuation omitted).

[13] *Id.* (punctuation omitted).

which the court can determine that the detention was neither arbitrary nor harassing."[14] Finally, as noted supra, a third-tier encounter is an actual or de facto arrest, which must be supported by probable cause.[15]

In the case sub judice, the trial court determined that Hammond was subjected to a lawful tier-two encounter with the officer but that Hammond "had no right to leave" and *Miranda* warnings were, therefore, required before the officer could question Hammond. We disagree with the latter half of the trial court's holding and note that "[r]esolving whether a suspect was in custody for *Miranda* purposes and whether a suspect was legally seized during a *Terry* stop require somewhat different analyses."[16]

In a *Terry*-type investigative detention, "the suspect is detained, but *Miranda* is not always triggered"[17] because "the safeguards prescribed by *Miranda* become applicable only after a detainee's freedom of action is curtailed to a degree associated with formal arrest."[18] Indeed,

> although an ordinary traffic stop curtails the freedom of action of the detained motorist and imposes some pressures on the detainee to answer questions, such pressures do not sufficiently impair the detainee's exercise of his privilege against self-incrimination so as to require that he be advised of his constitutional rights.[19]

When an officer makes an ordinary traffic stop, he or she may "temporarily detain anyone who tries to leave before the preliminary investigation is completed" and "[s]uch inquiries and detentions do not trigger the requirements of *Miranda*, unless the questioning is aimed at obtaining information to establish a suspect's guilt."[20]

Instead, to determine whether an individual was "in custody"

---

[14] *Id.* (punctuation omitted).

[15] *Thomas v. State*, 301 Ga. App. 198, 200 (1) (687 SE2d 203) (2009).

[16] *State v. Wintker*, 223 Ga. App. 65, 68 (476 SE2d 835) (1996).

[17] *Id.*

[18] *Thomas v. State*, 294 Ga. App. 108, 110 (1) (668 SE2d 540) (2008) (punctuation omitted); *see also Wintker*, 223 Ga. App. at 66 ("If the police take a suspect into custody and ask questions without informing the person of his *Miranda* rights, the responses cannot be introduced into evidence to establish his guilt.").

[19] *Thomas*, 294 Ga. App. at 110 (1) (punctuation omitted).

[20] *Wintker*, 223 Ga. App. at 67 (punctuation omitted); *see also Lebrun v. State*, 255 Ga. 406, 407 (3) (339 SE2d 227) (1986) ("[R]oadside questioning at a routine [traffic] stop does not constitute . . . a custodial situation."); *Tibbs v. State*, 207 Ga. App. 273, 273 (1) (427 SE2d 603) (1993) ("Police officers at the scene of a traffic stop may conduct a general on-the-scene investigation, which may even require that persons be temporarily detained, without being classified as custodial interrogation." (punctuation omitted)).

for purposes of *Miranda*, the test is "whether a reasonable person in the detainee's position would have thought the detention would not be temporary."[21] Under this test, a person is in custody for purposes of *Miranda* only if "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest."[22] And a "reasonable person" is one who is "neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances."[23] Additionally, "the subjective opinion of the officer concerning whether the suspect's detention constituted a custodial arrest is not controlling."[24]

Here, as stated previously, we agree with the trial court that Hammond was subjected to a tier-two *Terry*-type investigative detention, but we disagree that Hammond was "in custody" for purposes of *Miranda*. We will address each analysis in turn.

First, as to Hammond's detention, the officer observed Hammond traveling in the wrong direction on a one-way street while riding a bicycle without the required headlight, providing probable cause to initiate a stop.[25] After briefly questioning Hammond about the bicycle infractions and inquiring as to his identification, the officer checked to make sure Hammond was not the subject of any outstanding warrants. Immediately thereafter, the officer began to ask Hammond whether he possessed drug paraphernalia, as further detailed supra, because Hammond "was acting very nervous" and "seem[ed] high." Additionally, the officer stopped Hammond late at night in an area known for high drug activity, and he observed that Hammond acted "above average nervous" and fidgeted with an object in his pocket.

Given the foregoing facts, Hammond was detained for a reasonable time to investigate in conjunction with the valid stop, which included a check of Hammond's name and date of birth.[26] And the

---

[21] *Thomas*, 294 Ga. App. at 110 (1) (punctuation omitted).

[22] *Wintker*, 223 Ga. App. at 67.

[23] *Id.* (punctuation omitted); *see also Brown v. State*, 223 Ga. App. 364, 367 (477 SE2d 623) (1996) ("A reasonable person does not mean a person with a guilty conscience who knows as soon as they see the blue light that they will be arrested for matters known to them, but are not as yet known to the police." (punctuation omitted)).

[24] *Williams v. State*, 293 Ga. App. 842, 844 n.2 (668 SE2d 825) (2008).

[25] *See Wesley v. State*, 275 Ga. App. 363, 364 (620 SE2d 580) (2005) (holding that officer had probable cause to stop individual after observing traffic violation).

[26] *See Matthews v. State*, 294 Ga. App. 836, 838 (2) (670 SE2d 520) (2008) ("A reasonable time includes the time necessary to verify the driver's license, insurance, registration, and to complete any paperwork connected with the citation or written warning. A reasonable time also includes the time necessary to run a computer check to determine whether there are any outstanding arrest warrants for the driver or the passengers." (emphasis and punctuation omitted)).

officer testified that, in total, approximately three minutes passed from the point at which he stopped Hammond to the point at which he placed him under arrest. In this respect, we note that "police may lawfully ask questions unrelated to the purpose of a valid traffic stop, so long as the questioning does not unreasonably prolong the detention."[27] Thus, it is arguable that Hammond's traffic stop was complete when the officer discovered no outstanding warrants and, then, that the questions related to drug paraphernalia extended or expanded the stop.[28] Nevertheless, when an officer has "an articulable suspicion of another crime," additional questions and detention do not impermissibly exceed the scope of the investigation.[29] And here, the late hour; location of the stop in a known drug area; Hammond's excessive nervousness, incorrect response when asked his age, and constant fidgeting; and the officer's belief, based upon his training and experience, that Hammond was high, provided the necessary reasonable, articulable suspicion to continue the investigation.[30]

Having determined that Hammond was lawfully detained, we must next resolve whether Hammond was nevertheless "in custody" for purposes of *Miranda* warnings which, it is undisputed, were never read to him during the encounter. As explained supra, "the test for determining whether a person is under arrest at a traffic stop is whether a reasonable person in the suspect's position would have thought his detention would not be temporary."[31] In applying this

---

[27] *Id.*; *see also Salmeron v. State*, 280 Ga. 735, 736 (1) (632 SE2d 645) (2006) ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." (punctuation omitted)).

[28] *See Faulkner v. State*, 256 Ga. App. 129, 129-30 (567 SE2d 754) (2002) (detainee's valid traffic stop ended when officer returned license and insurance card but held a signed ticket while interrogating detainee as to "whether [he] had anything in the vehicle that [the officer] should know about").

[29] *See Henderson v. State*, 250 Ga. App. 278, 280 (551 SE2d 400) (2001); *see also Faulkner*, 256 Ga. App. at 130 ("[O]nce the tasks related to the investigation of the traffic violation and processing of the traffic citation have been accomplished, an officer cannot continue to detain an individual without articulable suspicion.").

[30] *See Almond v. State*, 242 Ga. App. 650, 651 (1) (530 SE2d 750) (2000) (officer properly expanded traffic stop inquiry into whether defendant "had anything in her vehicle that he should know about" when defendant illegally stopped in intersection, provided inconsistent responses, was seen with suspected drug dealer, and was nervous); *see also Wesley*, 275 Ga. App. at 364 (holding that traffic stop was properly extended to include drug-sniff walk-around after detainee admitted that he might be in possession of marijuana). *See generally Evans v. State*, 262 Ga. App. 712, 717 (1) (b) (586 SE2d 400) (2003) ("[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior. All of this conduct . . . suggested that the individual[ ] [was] engaged in criminal activity." (punctuation omitted)).

[31] *State v. Pierce*, 266 Ga. App. 233, 235 (1) (596 SE2d 725) (2004) (punctuation omitted).

test, we must examine all the surrounding circumstances.[32]

And here, during the valid tier-two stop, the officer inquired as to whether Hammond possessed anything the officer "needed to know about." The officer told Hammond that he would not be arrested if he had a crack pipe because "everybody out here has a crack pipe." Hammond then admitted to carrying a crack pipe before handing it over to the officer at his request. And when the officer then immediately asked if Hammond possessed crack, Hammond again admitted to having contraband in his possession. Thereafter, the officer began to handcuff Hammond and the struggle between the two ensued, during which Hammond attempted to dispose of the pill bottle containing crack.

Having heard the foregoing testimony, the trial court found that the officer's questions were improper because, despite finding that Hammond was subject to a lawful tier-two encounter, Hammond did not have the right to leave. Thus, the trial court suppressed Hammond's statements and the evidence discovered as a result of those statements. However, as noted supra, during a traffic stop, an officer "may conduct a general on-the-scene investigation, which may even require that persons be temporarily detained, without such being classified as custodial interrogation."[33] And when an officer briefly detains an individual to conduct an investigation at a traffic stop, "a custodial situation does not arise even if an officer believes he has probable cause to arrest a defendant, where the officer takes no overt step to communicate that belief."[34]

Here, the question regarding whether Hammond was in possession of contraband occurred within a few seconds of the stop, such that "no reasonable person could believe that they were under arrest and that they were not free to leave after the officer had been afforded a reasonable time to finish conducting a traffic investigation."[35] Additionally, the officer informed Hammond that he would not be arrested if he merely possessed a crack pipe. No reasonable person, having been told that he or she would *not* be arrested (denoting a future occurrence), could believe that he or she was *currently* in custody. And although the officer testified that Hammond was not free to leave during the investigation, there is no indication that the officer made "any statement or otherwise act[ed] in such a way that would cause a reasonable person to believe that he was under arrest and not simply temporarily detained for further

---

[32] *Id.*

[33] *Tibbs*, 207 Ga. App. at 273 (1) (punctuation omitted).

[34] *Pierce*, 266 Ga. App. at 235 (1).

[35] *Brown*, 223 Ga. App. at 367.

investigation . . . ."[36] Thus, Hammond was not "in custody" for purposes of *Miranda* at the time he admitted to possessing contraband.

Accordingly, the trial court erred in finding that although Hammond was appropriately detained pursuant to a tier-two investigation he was, nevertheless, "in custody" for purposes of *Miranda* and that all evidence should be suppressed.[37] We therefore reverse the trial court's judgment.

*Judgment reversed. Mikell, P. J., and Boggs, J., concur.*

## DECIDED FEBRUARY 3, 2012.

*Paul L. Howard, Jr., District Attorney, Elizabeth A. Baker, Assistant District Attorney*, for appellant.

*Kish & Lietz, Jessica K. Stern*, for appellee.

---

[36] *Loden v. State*, 271 Ga. App. 632, 633 (610 SE2d 593) (2005). *Compare Wintker*, 223 Ga. App. at 68-69 (detainee was "in custody" for purposes of *Miranda* after observing arrest of car's driver; being placed in locked patrol car while other passengers remained outside; observing drug sniff by police dog; and watching as police thoroughly searched her parents' car after she refused consent to search).

[37] *See, e.g., Pierce*, 266 Ga. App. at 236 (1) (reversing trial court's grant of a motion to suppress when a reasonable person in defendant's position would not have believed that he or she was in custody).