**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**February 26, 2013**

# In the Court of Appeals of Georgia

A12A1793. BOLEN v. THE STATE.

BRANCH, Judge.

Tyrone Bolen appeals his judgment of conviction and sentence of misdemeanor possession of marijuana, obstruction, and failure to have lights on a bicycle. He contends the trial court erred by denying his motion to suppress.

The State has the burden of proving that a search was lawful. *State v. Hammond*, 313 Ga. App. 882, 883-884 (723 SE2d 89) (2012). On appeal of the denial of a motion to suppress, we construe the facts in favor of the trial court's findings, uphold the court's findings unless clearly erroneous, and review de novo the trial court's application of the law to the facts. *Barrett v. State*, 289 Ga. 197, 200 (1) (709 SE2d 816) (2011); *Herrera v. State*, 288 Ga. 231, 233 (2) (702 SE2d 854) (2010).

The evidence presented at the hearing on the motion to suppress shows that at 6:19 p.m. on February 3, 2012, as it was "starting to get dark," two officers for the City of Waycross were riding in their marked patrol car when they saw Bolen riding a bicycle on the street without any headlights. The officers stopped, got out of the car, and approached Bolen from behind. As they did, they saw Bolen look back and then start to shove something into a bag that was attached to the front handlebars, leaving part of the object protruding from the bag. The officers could not, however, tell what the object was and therefore did not suspect it contained contraband at that time. Officer Chance then told Bolen that he had stopped him because his bicycle did not have headlights, and Chance obtained Bolen's name, date of birth and other information while Officer Tatum checked Bolen's license to see if there were any outstanding warrants. Chance then asked for permission to search Bolen's person, to which Bolen consented. Chance did not find anything illegal.

Chance then asked if he could look in the bag on the handlebars. Bolen said no but got nervous and started shaking, and he started trying to stuff the protruding object further into the bicycle bag. As Bolen did so, Officer Tatum "reached for [Bolen's] hand for my safety and Officer Chance's," and, at point, with the aid of a flashlight that Tatum was holding with his other hand, both Chance and Tatum saw

2

a green, leafy substance inside a plastic bag that was inside the bag attached to the handlebars, which they believed to be and later proved to be marijuana. Tatum told Bolen that he was under arrest and tried to put Bolen's hand behind his back. When Bolen broke away and moved toward Chance, Tatum dropped the flashlight and reached for his taser. Bolen fled but was soon caught and arrested. On the ground next to the bicycle, the officers also found a cigarette box containing marijuana.

Bolen's testimony conflicted with the officers' in several ways. He testified that Chance never said anything about a bicycle light. He admitted that the manner in which the officers approached him made him nervous. He testified that the officers came very close to him and asked him if he had any guns. Bolen denied having guns but then, in response to a request, consented to a search of his person. The officers searched him as he was straddling his bicycle and even made him take off his shoes without getting off of the bicycle. When Bolen started to reach in his pocket to get his identification, the officers said to stop and then told him to put his hands on the bicycle; one officer then took Bolen's license out of his pocket. After Bolen denied consent to search the bag, Chance tased him while he still had his hands on the handlebars. Bolen testified that at one point Chance tried to reach for the bag but that he – Bolen – put his hand over it and said no, "you cannot search my bag." He denied,

3

however, reaching into the bag. He testified that both officers tased him when they caught him after he fled. Bolen admitted possession of the marijuana found in the bag attached to the handlebars, as well as the marijuana found in the cigarette box.

"'There are at least three types of police-citizen encounters: verbal communications that involve no coercion or detention; brief stops or seizures that must be accompanied by a reasonable suspicion; and arrests, which can be supported only by probable cause.'" *In the Interest of D. H.*, 285 Ga. 51, 53 (2) (673 SE2d 191) (2009) (citation and punctuation omitted). For a "brief stop or seizure" to be valid, "an officer must identify specific and articulable facts that provide a reasonable suspicion that the individual being stopped is engaged in criminal activity." *Jones v. State*, 291 Ga. 35, 38 (2) (727 SE2d 456) (2012). Here, the officers testified that they saw Bolen riding his bicycle after dark without a headlight. Thus, the officers had articulable suspicion to believe that Bolen was operating his bicycle in violation of OCGA § 40-6-296 (a), which requires that bicycles "in use at nighttime shall be equipped with a light on the front." See, e.g., *Hammond*, 313 Ga. App. at 886 (officer had authority to conduct tier-two stop on cyclist, in part because the cyclist was riding without a required headlight.) Thus the stop itself was proper. At that point, the officers were "permitted to expand the detention into unrelated offenses. The officer may question

4

the motorist about anything and may ask for consent to search, as long as the questioning does not unreasonably prolong the detention." (Footnote omitted.) *Hayes v. State*, 292 Ga. App. 724, 728 (2) (665 SE2d 422) (2008). See also *Salmeron v. State*, 280 Ga. 735, 736 (1) (632 SE2d 645) (2006) ("The Fourth Amendment is not violated when, during the course of a valid traffic stop, an officer questions the driver or occupants of a vehicle and requests consent to conduct a search.").

Next, there was an issue of fact as to whether Chance asked for consent to search the bag and whether Bolen's own actions revealed the marijuana in the bicycle bag to the officers. The trial court specifically recognized that there was an issue of fact about Bolen's hand movement toward the bag: the officers testified that Bolen reached into it in an attempt to further secure what was protruding, whereas Bolen testified that he was reaching to cover up the bag as a part of refusing consent to search the bag. At the conclusion of the bench trial, the trial court denied the motion to suppress without explanation, which we must construe as resolving the facts in favor of the officers. See, e.g., *Tune v. State*, 286 Ga. App. 32, 33 (648 SE2d 423) (2007) (facts to be construed in favor of trial court decision even when trial court offered no explanation for decision). We therefore conclude that the court found that Chance asked for consent to search and that Bolen reached into the bag and thereby

5

exposed the contents to the officers, for which finding there was evidentiary support. At that point, the marijuana was in plain view. Accordingly, the officers were authorized to seize it and arrest Bolen. *Hines v. State*, 214 Ga. App. 476, 477 (448 SE2d 226) (1994) (officers authorized to seize bag of marijuana in plain view protruding from defendant's pocket). We find no error.

*Judgment affirmed. Miller, P. J., and Ray, J., concur.*