## A09A0675. ESCOBAR v. THE STATE.
### (676 SE2d 291)

BLACKBURN, Presiding Judge.

Following a jury trial, Ricardo Escobar was convicted of trafficking in methamphetamine.[1] He now appeals from the trial court's denial of his motion for a new trial, claiming that the trial court erred: (1) in admitting his allegedly custodial statements to a police officer; (2) in failing to hold an in camera hearing on his motion to require the State to reveal the identity of its confidential informant and in failing to grant that motion; and (3) in allowing certain hearsay testimony by the investigating officer. Escobar also challenges the sufficiency of the evidence supporting his conviction. Discerning no error, we affirm.

Viewed in the light most favorable to the verdict, *Daugherty v. State*,[2] the record shows that on June 9, 2004, Detective Ubaldo Rios drove a confidential informant (the "CI") to a local restaurant for a meeting with a suspected drug dealer known as "Hondureno." Rios, who was working undercover and posing as the CI's uncle, had equipped the CI with an audio transmitter, which allowed Rios to hear the conversation between the CI and Hondureno. Rios remained in the car and observed the CI enter the restaurant and sit with a man Rios identified at trial as Escobar. Rios heard the CI and Escobar talking, and heard Escobar agree to sell the CI cocaine and crystal methamphetamine.

The drug transaction was eventually scheduled for the next day, with Escobar agreeing to deliver the drugs to the CI's apartment complex in Gwinnett County. To avoid unduly jeopardizing the CI's safety, Rios instructed the CI that, once he had seen the drugs, he should refuse to go through with the transaction and then contact Rios.

Late that morning, Rios and other law enforcement agents observed Escobar drive his vehicle into the parking lot at the CI's apartment complex. Escobar exited his car carrying what appeared to be a large, white McDonald's bag, and met the CI in the parking lot. Escobar showed the CI the contents of the white bag and the two men returned to Escobar's car, where they stayed for approximately

---

[1] OCGA § 16-13-31 (e).

[2] *Daugherty v. State*, 283 Ga. App. 664, 665 (642 SE2d 345) (2007).

ten minutes. The CI went back to his apartment and called Rios, indicating that he had seen the drugs. The CI then returned to Escobar's vehicle, where Escobar used the CI's cell phone to call Rios. Escobar told Rios, "I have it with me, are you coming?" When Rios told Escobar they were no longer interested in purchasing the drugs, Escobar complained, "I drove all the way over here with all of this."

After the CI returned to his apartment, Escobar remained in his parked car for approximately 30 minutes. During that time, law enforcement agents saw an ice cream van pull into the parking lot of the apartment complex and drive to the back. Escobar then drove his car toward the back of the parking lot, near the ice cream van, and parked. Both Escobar and the driver of the van, who was identified at trial as Jaime Garza, exited their vehicles and spoke. At least two officers observed Escobar retrieve a package or bag from his car and hand it to Garza. Garza took the item and went into the ice cream van. After several minutes, Garza reappeared and spoke briefly with Escobar before both men returned to their vehicles and Escobar drove away.

A uniformed patrol officer stationed nearby began to follow Escobar as he drove past the officer's car. Following Escobar onto the interstate, the officer noticed Escobar's car weaving in and out of his lane and the emergency lane, causing the patrol officer to initiate a traffic stop. The patrol officer observed that Escobar was shaking as he handed the officer his license and asked Escobar why he was nervous. Escobar responded: "I'm not nervous. There's nothing in the car, search it." The consensual search of Escobar's car revealed no contraband, but officers did find a large, white McDonald's bag on the rear floorboard.

During a subsequent traffic stop of Garza, officers discovered two large packages of crystal methamphetamine, with a total weight of 896 grams, in one of the van's freezers, hidden underneath the ice cream contained therein. Both Garza and Escobar were arrested and were subsequently charged with trafficking in methamphetamine. Following his conviction, Escobar filed a motion for a new trial. The trial court denied that motion, and this appeal followed.

1. Escobar first asserts that because he was not read his *Miranda*[3] rights immediately after being stopped, his statement to the officer that "there's nothing in the car, search it," should have been excluded. We disagree.

An individual must be advised of his *Miranda* rights, including his right against self-incrimination, only "after being taken into

---

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

custody or otherwise deprived of [his] freedom of action in any significant way. A person is in custody for *Miranda* purposes if he has been formally arrested or restrained to the degree associated with a formal arrest." (Punctuation and footnote omitted.) *State v. Lucas*.[4] As a general rule, the detention associated with a traffic stop is not ordinarily sufficient to require that a detainee be read his *Miranda* rights. See *Lebrun v. State*[5] ("roadside questioning at a routine [traffic] stop does not constitute such a custodial situation"). Escobar argues that this general rule does not apply because, given that the stop was made for the express purpose of detaining and/or arresting him, he was in custody from the time it began. This argument, however, ignores the fact that "whether the police had probable cause to arrest and whether the defendant was the focus of the investigation are irrelevant considerations for *Miranda* purposes." *State v. Folsom*.[6] Additionally, "the subjective views of the interrogator and suspect are not dispositive of whether a person is in custody for the purposes of *Miranda* warnings." *Folsom*, supra at 13 (1). Rather, "the relevant inquiry in determining whether one is in custody is how a reasonable person in the suspect's position would perceive his or her situation." (Punctuation omitted.) *McDougal v. State*.[7]

There was no evidence in this case that the patrol officer made "any statement or otherwise act[ed] in such a way that would cause a reasonable person to believe that he was under arrest and not simply temporarily detained for further investigation pursuant to" a routine traffic stop. (Punctuation omitted.) *Clark v. State*.[8] Thus, because Escobar was not in custody at the time he made the statement at issue, the trial court properly denied his motion to suppress that statement. Id.

2. Escobar next asserts that the trial court erred in failing to hold an in camera hearing on his motion to require the State to disclose the identity of the CI and in failing to grant that motion. Escobar acknowledges, however, that he failed to preserve these claims of error for appeal because he failed both to raise his motion to compel disclosure and to offer any evidence in support of that motion at the pre-trial motions hearing. Escobar nevertheless argues that we should consider these claims under the plain error rule. "A plain error is one that is so clearly erroneous that it creates a likelihood of a grave miscarriage of justice or seriously affects the

---

[4] *State v. Lucas*, 265 Ga. App. 242, 243-244 (2) (593 SE2d 707) (2004).

[5] *Lebrun v. State*, 255 Ga. 406, 407 (3) (339 SE2d 227) (1986).

[6] *State v. Folsom*, 285 Ga. 11, 13 (1) (673 SE2d 210) (2009).

[7] *McDougal v. State*, 277 Ga. 493, 497 (1) (A) (591 SE2d 788) (2004).

[8] *Clark v. State*, 289 Ga. App. 884, 886 (2) (658 SE2d 372) (2008).

YALE LAW LIBRARY

fairness, integrity, or public reputation of the judicial proceeding."
*Patten v. State*.[9] Escobar, however, cannot demonstrate such an error.

> For purposes of determining whether the State must reveal
> the identity of the confidential informant, the trial court
> must conduct a two-step hearing: Initially, the trial court
> should hear evidence to determine: (a) that the confidential
> informant is an alleged informer-witness or informer-
> participant whose testimony appears to be material to the
> defense on the issue of guilt or punishment; (b) that the
> testimony for the prosecution and the defense is or will be in
> conflict; and (c) that the confidential informant was the
> only available witness who could amplify or contradict the
> testimony of these witnesses. *If the threshold is met, the
> trial court must conduct an in-camera hearing of the confi-
> dential informant's testimony.*

(Punctuation omitted; emphasis supplied.) *Hernandez v. State*.[10]

To show plain error, therefore, Escobar would need to point to
some evidence showing that he could meet the threshold showing
required for an in camera hearing on his motion for disclosure.
Escobar, however, fails to offer any argument to explain why the CI's
testimony would be relevant to the issue of his guilt or punishment.
Nor does he point to any portion of the record showing that there
was conflicting testimony for the prosecution and the defense,
thereby foreclosing the possibility that the CI's testimony was
needed to amplify or contradict any such conflicting evidence. In
short, Escobar "does not . . . suggest the [CI] would exonerate him,
or in any other way establish the [CI's] materiality and necessity."
*Smith v. State*.[11] Accordingly, Escobar cannot show that he was
entitled to an in camera hearing on his motion. Id. See also *Ealy v.
State*.[12] And, given that Escobar has pointed to no evidence or made
any argument showing that he could have established the threshold
requirements entitling him to an in camera hearing, he cannot show
that the trial court plainly erred in failing to grant his motion and to
require the State to disclose the identity of the CI. See, e.g., *Baggs v.
State*.[13]

3. Escobar next asserts that the trial court erred in allowing
Detective Rios to testify, over the objection of defense counsel, to

---

[9] *Patten v. State*, 275 Ga. App. 574, 575 (1) (621 SE2d 550) (2005).
[10] *Hernandez v. State*, 291 Ga. App. 562, 569 (3) (662 SE2d 325) (2008).
[11] *Smith v. State*, 192 Ga. App. 144 (1) (384 SE2d 677) (1989).
[12] *Ealy v. State*, 203 Ga. App. 219, 221 (3) (416 SE2d 559) (1992).
[13] *Baggs v. State*, 265 Ga. App. 282, 285 (3) (593 SE2d 734) (2004).

three different hearsay statements of the CI. This argument, however, misrepresents both what transpired at trial and the nature of Rios's testimony.

The first instance of alleged hearsay cited by Escobar relates to Rios's testimony regarding the CI's initial meeting with Escobar. As noted above, Rios explained that he could hear the conversation between the two men because the CI was equipped with an audio transmitter. After Rios identified Escobar as the man with whom the CI was conversing, he then testified that the two men discussed "that the two kilograms [of cocaine] and the pound of crystal meth would be ready later on in the day. That Mr. Escobar would contact the [CI] when he was ready."

Contrary to Escobar's assertions, this testimony did not constitute inadmissible hearsay. Our cases establish that a witness may testify as to the substance of a conversation he overheard, provided: (1) the witness can identify those who were speaking; and (2) the statements overheard by the witness fall within an exception to the hearsay rule. See *Smith v. State*[14] (witness's testimony as to a telephone conversation she overheard between two, identified parties did not violate hearsay rule); *Cook v. Huff*.[15] Both requirements were met in this case, because Rios could identify both the CI and Escobar as the persons having the conversation and the statements attributed to Escobar were admissible as voluntary, incriminating admissions. See *Brown v. State*[16] ("a voluntary, incriminating statement by a criminal defendant is admissible as an exception to the hearsay rule, as is an express or implied admission against interest") (punctuation omitted).

The second instance of alleged hearsay cited by Escobar shows that trial counsel's objection was successful. Specifically, that objection caused the prosecutor to rephrase his question, thereby allowing Rios to respond without offering hearsay. Finally, the transcript page cited by Escobar for the third alleged incident of hearsay reflects no hearsay testimony by Rios.

4. We find no merit in Escobar's final claim of error that the evidence was insufficient to support his conviction. To convict Escobar of trafficking in methamphetamine, the State was required to prove that he knowingly sold, delivered, or had possession of "28 grams or more of methamphetamine." OCGA § 16-13-31 (e). Here, the evidence showed that Escobar had actual possession of the drugs when he arrived at the apartment complex with the methamphet-

---

[14] *Smith v. State*, 275 Ga. 326, 327 (2) (565 SE2d 453) (2002).
[15] *Cook v. Huff*, 274 Ga. 186, 188 (3) (552 SE2d 83) (2001).
[16] *Brown v. State*, 293 Ga. App. 633, 636 (1) (b) (667 SE2d 899) (2008).

amine and showed it to the CI. Indeed, Escobar admitted his possession of the drugs during his cell phone conversation with Detective Rios. Together with the observations of the undercover officers, which indicated that Escobar had transferred possession of the drugs to his accomplice, this evidence was sufficient to convict Escobar of trafficking in methamphetamine. See *Navarro v. State*;[17] *Diaz v. State*.[18]

In light of the foregoing, we affirm the trial court's order denying Escobar's motion for a new trial.

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED MARCH 24, 2009.

*Clegg, Daniels & Petrey, John H. Petrey, Matthew D. Crosby*, for appellant.

*Daniel J. Porter, District Attorney, Rodney K. Miles, Assistant District Attorney*, for appellee.

---

[17] *Navarro v. State*, 293 Ga. App. 329, 331-332 (667 SE2d 125) (2008).
[18] *Diaz v. State*, 275 Ga. App. 557, 559 (621 SE2d 543) (2005).