### A10A1348. WATERS v. THE STATE.
(701 SE2d 550)

POPE, Senior Appellate Judge.

Following a bench trial based upon stipulated evidence, Jennifer Renee Waters was convicted of driving under the influence of alcohol (DUI),[1] failure to maintain lane,[2] and driving while her license was suspended.[3] On appeal, Waters contends that the trial court erred in denying her motion to suppress and motion in limine to exclude the results of the field sobriety tests since her detention had ripened into a custodial arrest and the officers had failed to advise her of her *Miranda*[4] rights and the implied consent warning[5] prior to the tests. Waters further contends that the evidence was insufficient to sustain her failure to maintain lane conviction. We agree that Waters's failure to maintain lane conviction must be reversed since the evidence failed to establish the offense. Waters's remaining convictions, however, are affirmed.

The undisputed evidence shows that on April 22, 2009, at

---

[1] OCGA § 40-6-391 (a) (5).

[2] OCGA § 40-6-48 (1).

[3] OCGA § 40-5-121 (a).

[4] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[5] OCGA § 40-6-392 (a) (4).

approximately 11:14 p.m., officers with the City of McDonough received a disturbance call, reporting that a male and a female in a black Jeep vehicle had been arguing and fighting in the parking lot of a local bar. The caller further advised that the suspects were possibly intoxicated and described the suspects' vehicle, including the last four digits of the tag number and its direction of travel upon exiting the bar's parking lot. A be-on-the-lookout ("BOLO") broadcast was transmitted through police radio, and the officers were dispatched to the area.

Shortly thereafter, the responding officers observed a vehicle matching the description in the BOLO and initiated a stop of the vehicle after it turned into the parking lot of a nearby gas station. Waters was driving the vehicle, and a male was sitting in the passenger seat. When the officers approached the vehicle, the male passenger jumped out and began to walk away, ignoring the officers' commands to get back into the vehicle. The passenger was belligerent, and it was obvious that he was intoxicated. After the passenger was detained, an officer approached Waters. The officer informed Waters that the stop was based upon the information received in the disturbance call and that he needed to ensure that no one was hurt or too impaired to drive. While speaking to the officer, Waters admitted that she had consumed alcohol that evening and had taken the prescription drugs Prozac and Xanax. In light of Waters's admissions, the officer called for the assistance of an officer with the HEAT Unit, who had specialized training to handle suspected DUI cases. The officer informed Waters that he had called the HEAT Unit so they could determine her ability to safely operate her vehicle. Waters was not placed in handcuffs and was not placed in the back of the officer's patrol car. Rather, she was directed to stand in front of the patrol car until the HEAT Unit officer arrived.

When the HEAT Unit officer received the dispatch call, he was engaging in a casual conversation with an undercover officer, whom he had stopped for a traffic violation. He received the dispatch call at approximately 11:27 p.m., left to go to the scene at approximately 11:36 p.m., and arrived at the scene at approximately 11:39 p.m.

Upon the arrival of the HEAT Unit officer, Waters voluntarily agreed to submit to field sobriety tests. Waters failed to successfully perform the tests and was arrested for DUI. Immediately following the arrest, the HEAT Unit officer read the implied consent warning to Waters. Waters consented to the state's breath test and provided two breath samples, which registered 0.141 and 0.143 respectively on the Intoxilyzer 5000 testing device.

1. Waters first contends that her motion to suppress and motion in limine should have been granted to exclude the results of her field sobriety tests from the evidence since she was not previously advised

of her *Miranda* warnings prior to the tests. We discern no error.

> An individual must be advised of his *Miranda* rights, including his right against self-incrimination, only after being taken into custody or otherwise deprived of his freedom of action in any significant way. A person is in custody for *Miranda* purposes if he has been formally arrested or restrained to the degree associated with a formal arrest.

(Citation, punctuation and footnote omitted.) *Escobar v. State*, 296 Ga. App. 898, 899-900 (1) (676 SE2d 291) (2009). The test for determining whether a detainee is in custody for *Miranda* purposes is "whether a reasonable person in the detainee's position would have thought the detention would not be temporary." (Citation and punctuation omitted.) *Johnson v. State*, 234 Ga. App. 116, 117 (2) (506 SE2d 234) (1998). The subjective views of the detainee and the officer are not dispositive to the determination. See *Escobar*, 296 Ga. App. at 900 (1). As a general rule, although a motorist is deprived of his freedom of action during a traffic stop, such detention is insufficient to trigger the rights set forth in *Miranda*. See *Escobar*, 296 Ga. App. at 900 (1); *Johnson*, 234 Ga. App. at 117-118 (2). "The issue of whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous." (Citation omitted.) *Johnson*, 234 Ga. App. at 118 (2).

In this case, although Waters was not free to leave the scene, she was not handcuffed or placed in the patrol car during the pending investigation. The officer testified that there had been no initial determination of whether Waters was intoxicated or whether her prescribed medications had impaired her ability to drive. In addition to informing Waters of the reason for the stop, the officer told her that they had to wait for a HEAT Unit officer to determine whether she was too impaired to safely operate her vehicle. Based upon these circumstances, the trial court was authorized to find that a reasonable person would believe that her freedom of action was only temporarily curtailed pending further investigation during the traffic stop. See *Thomas v. State*, 294 Ga. App. 108, 110-111 (1) (668 SE2d 540) (2008); *Clark v. State*, 289 Ga. App. 884, 885-886 (2) (658 SE2d 372) (2008); *Tune v. State*, 286 Ga. App. 32, 34-35 (1) (b) (648 SE2d 423) (2007). The officers therefore were not required to advise Waters of her *Miranda* rights prior to the field sobriety testing. Id.

Waters nevertheless argues that the delay between the time of the stop and the arrival of the HEAT Unit officer was unreasonable and caused her detention to ripen into a custodial arrest. She

contends that the investigation was not diligently pursued since the HEAT Unit officer did not immediately respond to the scene after receiving the dispatch call for assistance.

Waters's argument is without merit. The evidence showed that the traffic stop commenced shortly after 11:14 p.m. The HEAT Unit officer received the dispatch call at approximately 11:27 p.m., began driving to the scene at approximately 11:36 p.m., and arrived at the scene at approximately 11:39 p.m. Accordingly, approximately 25 minutes elapsed between the initial stop and the HEAT Unit officer's arrival at the scene. A delay of this duration does not automatically convert the investigation into a custodial situation. See *Aldridge v. State*, 237 Ga. App. 209, 213 (3) (515 SE2d 397) (1999) (a delay of 45 to 50 minutes during a traffic stop was not deemed as unreasonable). See also *Harper v. State*, 243 Ga. App. 705, 706 (1) (534 SE2d 157) (2000) (a delay of up to an hour was not deemed as unreasonable for the traffic stop investigation). Under the circumstances presented here, the trial court was authorized to find that the officers' investigation in this case was not unreasonably prolonged or delayed and that the officers pursued the investigation with reasonable diligence. See *Harper*, 243 Ga. App. at 706 (1); *Aldridge*, 237 Ga. App. at 213 (3). The denial of Waters's motion to suppress on this ground was not erroneous.

2. Waters further contends that the trial court erred in denying her motion to suppress and motion in limine because the officers failed to read the implied consent warning prior to the field sobriety tests. Again, we discern no error.

> OCGA § 40-6-392 (a) (4) provides, in part, that the arresting officer at the time of arrest shall advise the person arrested of his rights to a chemical test or tests according to this Code section. This statute requires exclusion of the results of a State-administered chemical test where the notice was not given at the time of arrest, or at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant.

(Citation and punctuation omitted.) *Thomas*, 294 Ga. App. at 111 (2). Waters argues that the implied consent warning was untimely given because, as previously alleged, she was in custody before the HEAT Unit officer arrived at the scene. As we have explained in Division 1 above, Waters's argument is without merit. It is undisputed that the HEAT Unit officer gave Waters the implied consent warning immediately after her DUI arrest. The notice therefore was timely given. See *Thomas*, 294 Ga. App. at 111-112 (2); *Tune*, 286 Ga. App. at 35 (2); *State v. Jones*, 261 Ga. App. 357, 359-360 (583 SE2d

139) (2003).

3. Lastly, Waters challenges the sufficiency of the evidence to sustain her conviction for failure to maintain lane.

On appeal, we view the evidence in the light most favorable to the judgment of conviction. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The traffic offense of failure to maintain lane is proscribed under OCGA § 40-6-48 (1), which pertinently provides that "[w]henever any roadway has been divided into two or more clearly marked lanes for traffic, . . . [a] vehicle shall be driven as nearly as practicable entirely within a single lane[.]" The state failed to present any witness testimony pertaining to the failure to maintain lane charge, and instead relied solely upon the videotape depicting Waters's operation of the vehicle immediately prior to the stop. The videotape was admitted into evidence and has also been submitted for our appellate review. After watching the videotape, we fail to see where Waters's vehicle crossed into the adjacent lane of traffic. The evidence, therefore, was insufficient to sustain Waters's failure to maintain lane conviction.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED SEPTEMBER 16, 2010.

*Brent D. Hutchison*, for appellant.
*Charles A. Spahos, Solicitor-General, Brian M. Johnston, Assistant Solicitor-General*, for appellee.