## A11A0189. DiMAURO v. THE STATE.
(714 SE2d 105)

BLACKWELL, Judge.

Following a bench trial in Henry County, Nicholas DiMauro was convicted of driving under the influence of alcohol in violation of OCGA § 40-6-391 (a) (5), based on, among other things, stipulated

---

evidence of the results of an Intoxilyzer 5000 breath test.[1] DiMauro appeals, asserting that, because no officer read the *Miranda*[2] warnings to him before field sobriety tests were administered, the court below should have granted his motion to suppress evidence of the results of the field sobriety tests, as well as the Intoxilyzer 5000 breath test, which was administered later. DiMauro also contends that the court erred when it refused to issue a certificate under the Uniform Act to Secure the Attendance of Witnesses from Without the State (the "Uniform Act"), OCGA § 24-10-90 et seq., to secure the appearance of a Kentucky witness to testify about the source code of the Intoxilyzer 5000. We see no error in the denial of the motion to suppress, and with respect to that claim of error, we affirm the judgment below. We conclude, however, that the trial court applied the wrong standard when it refused to issue a certificate under the Uniform Act, and we remand for the trial court to apply the correct standard, consider whether it should have issued a certificate, and if so, determine whether its refusal to do so entitles DiMauro to a new trial.

The record shows that on November 15, 2009, at approximately 4:00 a.m., an officer observed DiMauro driving on I-75 at a speed of 96 miles per hour and initiated a traffic stop. When the officer first spoke with DiMauro, the officer detected an odor of alcohol. The officer then went to his patrol car and wrote a citation for speeding. When the officer later returned to DiMauro to issue the speeding citation, the officer again noticed an odor of alcohol and observed that DiMauro appeared confused and bewildered. The officer also saw that DiMauro had red and bloodshot eyes.

When asked whether he had consumed any alcoholic drinks, DiMauro at first denied that he had done so, but after he was asked to submit to a roadside breath test, he admitted that he had, in fact, consumed several. DiMauro agreed to take the roadside breath test, and it indicated the presence of alcohol. The officer then asked DiMauro to submit to two field sobriety tests, and DiMauro agreed. In the course of administering these tests, the officer noted that DiMauro lost his balance during the instructional phase of the walk-and-turn evaluation. Concerned that DiMauro might be impaired, the officer called for a second officer — one qualified to perform a horizontal gaze nystagmus ("HGN") field sobriety evaluation, which the first officer was not — to come to the scene.

DiMauro and the first officer waited approximately 20 minutes

---

[1] DiMauro pled guilty to speeding in violation of OCGA § 40-6-181. A charge of driving under the influence of alcohol to the extent he was less safe to drive, in violation of OCGA § 40-6-391 (a) (1) was nol prossed.

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

for the arrival of the second officer, during which time DiMauro was not free to leave the scene. While they waited, however, DiMauro was not placed in handcuffs or a patrol car, was able to move about freely, and actually returned to his car to get a jacket. When the second officer arrived and performed the HGN evaluation, he detected six out of six clues indicating impairment. Finding DiMauro impaired, the officers placed him under arrest for driving under the influence of alcohol and advised him of his implied consent rights. After DiMauro was transported to the county jail, his breath was tested with the Intoxilyzer 5000, and his alcohol concentration was determined to be 0.105.

1. DiMauro says that the trial court erred when it denied his motion to suppress because the field sobriety tests, including the HGN evaluation, were administered "without his having the benefit of the *Miranda* warning provided to him prior to those tests." We have explained before that "[a]n individual must be advised of his *Miranda* rights, including his right against self-incrimination, only after being taken into custody or otherwise deprived of his freedom of action in any significant way." *Waters v. State*, 306 Ga. App. 114, 116 (1) (701 SE2d 550) (2010) (citation and punctuation omitted). And we have noted that, "although a motorist is deprived of his freedom of action during a traffic stop," such a deprivation does not always "trigger the rights set forth in *Miranda*." Id. Instead, "[t]he test for determining whether a person is 'in custody' at a traffic stop is if a reasonable person in the suspect's position would have thought the detention would not be temporary." *Harper v. State*, 243 Ga. App. 705, 706 (1) (534 SE2d 157) (2000) (citation and punctuation omitted).

DiMauro argues that he was in custody at least by the time the HGN field sobriety test was administered, emphasizing the time that elapsed between the initiation of the traffic stop and the arrival of the second officer, as well as the fact that, when the HGN test was administered, he already had been cited for speeding. We find no merit in this argument. The trial court found that DiMauro was taken into custody only after the second officer performed the HGN evaluation and completed his investigation of whether DiMauro was impaired. "[W]hether one is in custody for *Miranda* purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous." *Harper*, 243 Ga. App. at 706 (1) (citation and punctuation omitted).

The determination of the court below that DiMauro was not in custody until after the HGN evaluation and other field sobriety tests were complete is not clearly erroneous. DiMauro was allowed to walk around and was not put into handcuffs or a patrol car while he and the first officer awaited the arrival of the second officer. DiMauro had been informed that he was suspected of driving under the influence

and that the second officer had been called to further investigate this suspicion. And the delay occasioned by the need to summon a second officer was only about 20 minutes. See *Waters*, 306 Ga. App. at 116 (1); *Harper*, 243 Ga. App. at 706 (1). Although DiMauro was not free to leave while they waited for the second officer to arrive, "not every detention is an arrest." *Harper*, 243 Ga. App. at 706 (1). In prior cases, we have held that even lengthier delays did not transform an investigative detention into a custodial arrest. See id. (delay of up to an hour); *Aldridge v. State*, 237 Ga. App. 209, 213 (3) (515 SE2d 397) (1999) (a delay of 45 to 50 minutes). Under the circumstances presented here, "a reasonable person [in the position of DiMauro] could conclude that his freedom of action was only temporarily curtailed and that a final determination of his status was simply delayed." *Harper*, 243 Ga. App. at 706 (1). The trial court's finding that DiMauro was placed under arrest only after the field sobriety tests were complete is not clearly erroneous.

2. DiMauro also complains on appeal of the refusal of the court below to issue a certificate to secure the appearance of an out-of-state witness — an executive of CMI, Inc., the Kentucky company that manufactures the Intoxilyzer 5000 — to testify about the Intoxilyzer 5000 source code. In its order denying his request for such a certificate, the trial court relied substantially on *Davenport v. State*, 303 Ga. App. 401 (693 SE2d 510) (2010), in which this Court upheld a refusal to issue a certificate to secure testimony from a CMI witness. Applying the standard set forth in our *Davenport* opinion, the trial court concluded that DiMauro failed to show that CMI was a "necessary and material witness," and based on this conclusion, refused to issue the certificate.[3] The Supreme Court, however, recently reversed our decision in *Davenport* and said that we applied the wrong standard in that case, meaning that the court below applied the wrong standard in this case too. See *Davenport v. State*, 289 Ga. 399 (711 SE2d 699) (2011).

The Supreme Court explained in *Davenport* that "necessary and material" is not the standard that a trial court should apply when it considers whether to issue a certificate under the Uniform Act. Instead, the trial court simply must determine whether a witness is "material," as that term is defined in the *Davenport* decision. According to the Supreme Court, if a witness is material, the trial court " 'may issue a certificate under . . . seal' that is then presented to a judge of a court of record in the out-of-state county in which the

---

[3] The trial court also relied on our opinion in *Yeary v. State*, 302 Ga. App. 535 (690 SE2d 901) (2010), which the Supreme Court recently reversed as well. See *Yeary v. State*, 289 Ga. 394 (711 SE2d 694) (2011).

witness is found." *Davenport*, 289 Ga. at 401 (citation omitted). It is for the out-of-state judge then to determine whether to issue a subpoena directing the witness to attend and testify in the Georgia criminal proceeding. Id.

Because the court below did not apply the standard adopted by the Supreme Court in *Davenport*, we remand for the court to apply the correct standard and revisit the request in this case for a certificate under the Uniform Act. If the court below determines that the witness for whom a certificate was requested is a "material" witness, it then must consider whether it ought to have issued a certificate in this case, and if so, whether DiMauro is entitled to a new trial or a new trial conditioned on the issuance by the appropriate out-of-state court of a subpoena to compel the appearance of the witness in Georgia. If the court below determines that no new trial is warranted, the judgment of conviction will stand affirmed, provided that DiMauro may file a timely appeal of that determination.

*Judgment affirmed on condition and case remanded with direction. Barnes, P. J., and Adams, J., concur.*

DECIDED JULY 6, 2011.

*Head, Thomas, Webb & Willis, William C. Head*, for appellant.
*Charles A. Spahos, Solicitor-General, Courtney L. Stewart, Assistant Solicitor-General*, for appellee.