**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J. and BOGGS, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 14, 2013**

# In the Court of Appeals of Georgia

A12A2137. APPLING v. THE STATE.                    DO-081 C

DOYLE, Presiding Judge.

After a jury trial, Robert Earl Appling was convicted of driving under the influence of drugs such that it was less safe to do so,[1] for driving under the influence of alcohol such that it was less safe to do so,[2] and for driving under the influence of two or more substances such that it was less safe to do so.[3] On appeal, Appling argues that the trial court erred by denying his motion for new trial and motion to suppress the results of the field sobriety tests because he was in custody for purposes of

---

[1] OCGA § 40-6-391 (a) (2).

[2] OCGA § 40-6-391 (a) (1).

[3] OCGA § 40-6-391 (a) (4).

*Miranda v. Arizona*[4] and was not properly advised of his rights. We disagree and affirm for the reasons that follow.

> In reviewing a trial court's ruling on a motion to suppress, we construe the evidence in a light favorable to upholding the trial court's finding and judgment. We will not disturb the trial court's ruling if there is any evidence to support it, and we accept the trial court's credibility determinations unless clearly erroneous. The trial court's application of law to undisputed facts, however, is subject to de novo review.[5]

Viewing the evidence in the light most favorable to the verdict,[6] at approximately 1:30 a.m. on October 25, 2009, Officer Haney effectuated a traffic stop of a pickup truck after observing the driver, later discovered to be Appling, have difficulty maintaining his lane. After Officer Haney approached the vehicle, he asked Appling whether he had been drinking, to which Appling responded that he had consumed "a couple" of drinks. Haney was a shift supervisor and had a trainee with him and did not handle lengthy traffic stops, so he requested the assistance of Officer

---

[4] 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[5] (Citation and punctuation omitted.) *Carter v. State*, __ Ga. App. __ (1) (__ SE2d __) (Case No. A12A2399; decided Jan. 25, 2013).

[6] See *Goss v. State*, 305 Ga. App. 497 (699 SE2d 819) (2010).

2

Jason Egerton for the stop. Officer Egerton arrived at the scene after about 30 minutes, and Egerton asked Appling to exit the vehicle to perform field sobriety tests.

Officer Egerton suspected that Appling was attempting to "beat" the nystagmus portions of the field sobriety tests, and he requested the assistance of another officer, Chris Dale, who was trained to recognize drug intoxication. When Dale arrived at the scene about 15 minutes later, he parked his cruiser in front of Applings's truck, while Haney's and Egerton's cruisers remained parked behind Appling's vehicle. Officer Dale administered field sobriety tests on Appling while the three other officers remained at the scene. Officer Dale also administered an alco-sensor test, which was positive for alcohol. At the conclusion of the tests, Officer Dale placed Appling under arrest and read him the implied consent warning for subjects over 21. Officer Dale asked Appling if he would consent to a blood test, and Appling agreed.

Officer Dale transported Appling to a local emergency room in order to have the blood test performed and was told that it would be approximately 40 minutes before a technician would arrive to perform the test. At that time Dale advised Appling of his rights, and Appling asked for an attorney prior to any questioning. When the technician arrived to perform the blood draw, Appling requested to speak to an attorney prior to having the procedure, and Officer Dale explained that under

implied consent, Appling could refuse the test or allow the test, but would not be allowed to confer with an attorney before hand. Based on Appling's continued insistence to speak with an attorney prior to the test, Officer Dale took Appling to the jail and booked him without having the blood draw performed.

Appling argues that upon Officer Dale's arrival at the scene as the third police car and fourth officer, Appling was "in custody" for purposes of *Miranda* and that Officer Dale should have provided the warnings prior to performing any field sobriety tests.

It is well settled that officers are not required to provide warnings under *Miranda* prior to "administering field sobriety tests during a traffic stop unless the suspect is in custody."[7]

> The test for determining whether a detainee is in custody for *Miranda* purposes is whether a reasonable person in the detainee's position would have thought the detention would not be temporary. The subjective views of the detainee and the officer are not dispositive to the determination. As a general rule, although a motorist is deprived of his freedom of action during a traffic stop, such detention is insufficient to trigger the rights set forth in *Miranda*. The issue of whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and

---

[7] *Arce v. State*, 245 Ga. App. 466 (538 SE2d 128) (2000).

the trial court's determination will not be disturbed unless it is clearly erroneous.[8]

Here, Appling has failed to establish that a reasonable person would have believed he was in custody rather than temporarily detained at the time Officer Dale administered the field sobriety tests. None of the officers told Appling that he appeared to be intoxicated or that they intended to arrest him prior to Dale's formal arrest. Appling was not handcuffed or directed where to stand or sit while waiting on Dale to arrive. Although there were a total of four officers on the scene, the totality of circumstances does not evince an arrest. Officer Haney and the trainee were not in earshot of Appling after Officer Egerton arrived on the scene, and although Officer Egerton called for a more experienced officer to assist and perform the field sobriety tests, he did not place Appling in his cruiser, handcuff him, or direct him to wait at a specific location while waiting on Officer Dale.[9] The mere presence of four officers

---

[8] (Citations and punctuation omitted.) *Waters v. State*, 306 Ga. App. 114, 116 (1) (701 SE2d 550) (2010).

[9] Compare with *Smith v. State*, 262 Ga. App. 614, 618-620 (2) (585 SE2d 888) (2003) (detention became an arrest, triggering necessity of *Miranda* warnings, when, after questioning suspect driver about a theft, officers seized her cell phone and directed her to drive her vehicle to the apartment believed to contain proceeds of the crime and directed her to leave the vehicle with her four-month-old infant therein to enter the apartment).

5

at the scene does not constitute an arrest as a matter of law, and taking into account all of the circumstances surrounding the detention, it was not necessary for Officer Dale to advise Appling of his *Miranda* rights prior to administering the field sobriety tests because Appling was not under arrest.[10] Accordingly, the trial court did not err by denying Appling's motion to suppress or motion for new trial as to that issue.

*Judgment affirmed. Andrews, P. J. and Boggs, J., concur.*

---

[10] See *Waters*, 306 Ga. App. at 116-117 (1) (additional officers called in to perform field sobriety tests and prolonged stop for those officers to arrive did not transform detention into arrest). See also *State v. Padidham*, 310 Ga. App. 839, 841 n. 8 (1) (714 SE2d 657) (2011) (collecting cases).