**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 19, 2013**

# In the Court of Appeals of Georgia

A12A1830. THE STATE v. MOSLEY.

DILLARD, Judge.

The State of Georgia appeals from the trial court's order granting Sean L. Mosley's motion to suppress evidence obtained on the night of his arrest for driving under the influence of alcohol in violation of OCGA § 40-6-391 (a) (1). Because we conclude that the trial court erred in suppressing the evidence, we reverse.

We begin by noting that, on appeal from a ruling on a motion to suppress, we defer to the trial court's factual findings and credibility determinations, but review *de novo* the court's application of the law to the undisputed facts.[1] And significantly, to the extent that the controlling facts "are undisputed because they are plainly

---

[1] *Johnson v. State*, 299 Ga. App. 474, 474 (682 SE2d 601) (2009).

discernable from the patrol car-mounted video recording," as they are in this case, we review those facts *de novo*.[2]

The record shows that on the night in question, a deputy from the Fayette County Sheriff's Office was dispatched to a convenience store after the store's clerk called law enforcement because she witnessed a dispute in the parking lot involving a male and female arguing loudly. Upon his arrival to the scene, the deputy observed Mosley and a female standing beside Mosley's car, which appeared to have been involved in a recent accident—*i.e.*, the rear tire was flat, the rim was cracked, and the bumper was damaged. As the deputy approached the vehicle,[3] Mosley attempted to leave, stating that he "just want[ed] to walk home." The deputy requested that Mosley return to the vehicle so that he could investigate the reason for the clerk's call. And as Mosley was walking toward him, the deputy observed that he was staggering and detected a strong odor of alcohol coming from his person. Then, in response to questions from the deputy, Mosley stated that he had been driving with his female

---

[2] *Id.* at 474-75; *see Boyd v. State*, 315 Ga. App. 256, 257 (1) (726 SE2d 746) (2012) ("[W]here controlling facts are not in dispute, such as those facts discernible from a videotape, our review is de novo." (punctuation omitted)).

[3] The deputy confirmed with the female companion that the vehicle belonged to Mosley.

companion—whom he had just encountered at a nightclub—when his vehicle got a flat tire and she became upset with him.

A second sheriff's deputy then arrived on the scene. At this point, the first deputy asked Mosley to lean on the bumper of his patrol vehicle while he and the second deputy turned and walked a short distance away to engage in a private discussion. During the deputies' brief conversation, Mosley began to walk away, and the first deputy directed him back to the bumper of his patrol car. The following conversation then ensued between Mosley and the first deputy:

Deputy: Hey, sir, would you mind voluntarily doing field sobriety for me?

Mosley: No.

Deputy: You said, no, you don't want to do field sobriety?

Mosley: Why? I'm not driving.

Deputy: Listen, listen, listen to me—step back and lean on the bumper. Would you mind voluntarily doing field sobriety?

Mosley: Are you saying you are going to arrest me?

Deputy: No, I'm saying I'm going to conduct some field-sobriety test, test your impairment to see if you are safe enough to drive and/or walk away.

Mosley: I'm not going to drive.

Deputy: Listen to me, to drive and/or walk away.

Mosley: Okay. I'll do it.

This conversation took place less than eight minutes into the encounter.[4] The first deputy then conducted field-sobriety tests and arrested Mosley for DUI less safe, in violation of OCGA § 40-6-391 (a) (1).

Thereafter, Mosley filed a motion to suppress both the field-sobriety-test results and any subsequent testimonial evidence arguing, *inter alia*, that he was in custody at the time the tests were conducted and therefore should have been advised of his rights under *Miranda v. Arizona*[5] prior to being subjected to the tests. And after

---

[4] An officer is permitted to attempt to persuade an individual to submit to a field-sobriety test, so long as in doing so the officer makes no "threat of criminal sanction or any show of force" that would "improperly compel a suspect into submitting to the tests." *Rowell v. State*, 312 Ga. App. 559, 563 (718 SE2d 890) (2011).

[5] 384 U.S. 436 (86 SCt 1602, 16 LEd2d 694) (1966).

4

holding a hearing and watching the videotaped evidence from the first deputy's vehicle-mounted camera, the trial court granted Mosley's motion to suppress the evidence. Specifically, the trial court held that Mosley was under arrest at the time he agreed to submit to the field-sobriety testing and, therefore, should have first been given his *Miranda* rights. This appeal by the State follows.[6]

In Georgia, it is well established that during the course of an investigation, a law-enforcement officer may temporarily detain an individual and that such a detention does not normally trigger the protections of *Miranda*.[7] And with respect to

---

[6] This appeal is authorized by OCGA § 5-7-1 (a) (4), which provides that

> [a]n appeal may be taken by and on behalf of the State of Georgia from the superior courts . . . in criminal cases . . . [f]rom an order, decision, or judgment suppressing or excluding evidence illegally seized or excluding the results of any test for alcohol or drugs in the case of motions made and ruled upon prior to the impaneling of a jury or the defendant being put in jeopardy, whichever occurs first . . . .

[7] *See Tolliver v. State*, 273 Ga. 785, 786 (546 SE2d 525) (2001) ("[A] law enforcement officer coming upon the scene of suspected criminal activity will conduct a general on-the-scene investigation and may detain temporarily anyone at the scene. Such detentions do not trigger the requirements of *Miranda v. Arizona*." (punctuation omitted)); *see also Berkemer v. McCarty*, 468 U.S. 420, 435-42 (III) (104 SCt 3138, 82 LEd2d 317) (1984); *Crider v. State*, __ Ga. App. __, *2 (Case No. A12A2414, decided Jan. 17, 2013).

a DUI investigation in particular, *Miranda* warnings are not required "while an investigating officer conducts preliminary questioning or field sobriety tests."[8] Once a DUI suspect is in custody, however, *Miranda* warnings must "precede further field sobriety tests in order for evidence of the results to be admissible."[9] To that end, when analyzing whether a suspect is in custody, the relevant inquiry is "whether, under the circumstances, a reasonable person would conclude that his or her freedom of action was only temporarily curtailed and that a final determination of his or her status was merely delayed."[10] A reasonable person is "one neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances."[11]

---

[8] *Crider*, __ Ga. App. at *2 (punctuation omitted); *accord Polizzotto v. State*, 248 Ga. App. 814, 816 (1) (547 SE2d 390) (2001).

[9] *Crider*, __ Ga. App. at *2 (punctuation omitted); *accord Polizzotto*, 248 Ga. App. at 816 (1).

[10] *Hale v. State*, 310 Ga. App. 363, 366 (1) (714 SE2d 19) (2011); *see Price v. State*, 269 Ga. 222, 225 (3) (498 SE2d 262) (1998) ("The test of 'in custody' is whether a reasonable person in the suspect's position would have thought the detention would not be temporary." (punctuation omitted)); *State v. Pastorini*, 222 Ga. App. 316, 317 (1) (474 SE2d 122) (1996) ("[A]lthough an ordinary traffic stop curtails the freedom of action of the detained motorist and imposes some pressures on the detainee to answer questions, such pressures do not sufficiently impair the detainee's exercise of his privilege against self-incrimination so as to require that he be advised of his constitutional rights."); *see also Berkemer*, 468 U.S. at 442 (III).

[11] *Crider*, __ Ga. App. at *2 (punctuation omitted).

And a detained individual is not under arrest simply because, by leaving, "he could be arrested for violating state law."[12] Finally, the subjective belief of an officer that he or she may have probable cause to arrest a suspect is wholly irrelevant in the absence of an *overt step* to communicate that belief. Indeed, in the absence of an officer making a statement that would cause a reasonable person to believe that he was under arrest—as opposed to being temporarily detained—during an investigation, the officer's subjective "belief" that probable cause exists to make an arrest "does not determine when the arrest is effectuated until the officer *overtly acts so that a reasonable person would believe he was under arrest.*"[13]

Applying the foregoing principles to the case *sub judice*, we conclude that the trial court erred in holding that Mosley was in custody for purposes of *Miranda* at the time the field-sobriety tests were conducted. The first deputy was responding to a call from a concerned convenience-store clerk. And during his investigation into the

---

[12] *Smith v. State*, 236 Ga. App. 548, 550 (2) (512 SE2d 19) (1999), *rev'd on other grounds*, 272 Ga. 83 (526 SE2d 59) (2000).

[13] *State v. Pierce*, 266 Ga. App. 233, 235 (1) (596 SE2d 725) (2004) (emphasis supplied) (punctuation omitted); *see Smith*, 236 Ga. App. at 551 (2) ("The fact that [appellant] had become the focus of an investigation, even to the point where the officer had probable cause for an arrest, did not constitute a formal arrest for Miranda purposes.").

reason for the clerk's call, the deputy observed that Mosley's car appeared to have been in a recent accident and that Mosley was possibly under the influence of alcohol, which naturally caused the deputy to expand the nature of his investigation.

Additionally, while it is certainly true that Mosley was not permitted to leave the scene during the course of the first deputy's questioning, there is nothing in the deputy's words or actions that would cause a reasonable person to conclude that Mosley's freedom of action was more than temporarily curtailed pending the outcome of the investigation. Indeed, at no time did the deputy tell Mosley that he was under arrest. To the contrary, when Mosley asked the deputy during his investigation whether he was under arrest, the deputy explicitly answered this question in the negative (as noted *supra*). Moreover, the deputy never placed Mosley in handcuffs or in the back of the patrol car during his questioning. In fact, the deputy even turned his back on Mosley at one point in his investigation (*i.e.*, when he stepped away to engage in a private conversation with the second deputy), walking in the opposite direction of Mosley and leaving him standing alone at the back of the vehicle. In sum, our examination of the video convinces us that a reasonable person would conclude that the first deputy was conducting field-sobriety testing for the very purpose of determining whether to take Mosley into custody. Thus, when all of the surrounding

circumstances are taken into consideration, we conclude that treatment of this nature cannot fairly be characterized as "the functional equivalent of [a] formal arrest."[14]

And for all of the foregoing reasons, we conclude that the trial court erred in suppressing the results of the field-sobriety tests and any subsequent statements on the basis of a *Miranda* violation.[15]

*Judgment reversed. Ellington, C. J., and Phipps, P. J., concur.*

---

[14] *Tolliver*, 273 Ga. at 786 (punctuation omitted).

[15] *See State v. Hammond*, 313 Ga. App. 882, 888 (723 SE2d 89) (2012) (holding that the trial court erred in finding a *Miranda* violation in part because "[n]o reasonable person, having been told that he or she would not be arrested (denoting a future occurrence), could believe that he or she was currently in custody"); *Pierce*, 266 Ga. App. at 234-36 (1) (holding that the trial court erred in concluding that appellant was under arrest for the purposes of *Miranda*, even though the officer made reference to "some other drunk," when the officer left appellant standing alone at police car while he temporarily left to speak to a second officer); *Harper v. State*, 243 Ga. App. 705, 706 (1) (534 SE2d 157) (2000) (affirming trial court's holding that appellant was not in custody, despite the fact that he was detained while waiting for the arrival for a DUI task force officer, because he was allowed to walk around, was not placed in the back of the police car, and was not handcuffed); *Pastorini*, 222 Ga. App. at 317-18 (1) (reversing the trial court's finding of a *Miranda* violation because defendant had been involved in a car accident and, even though the appellant told the officer that he "should be at home" and not driving, the officer only posed questions relevant to the accident investigation); *see also Crider*, __ Ga. App. at *2-3. *Compare State v. O'Donnell*, 225 Ga. App. 502, 504 (2) (484 SE2d 313) (1997) (appellant—who was involved in a car accident, left the scene, and was almost immediately involved in a second accident—was in custody at the time that the officer brought him in the patrol car from the scene of the second accident to the scene of the first accident and requested that he perform field-sobriety tests).