**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 18, 2016**

# In the Court of Appeals of Georgia

A16A0478. PEDERSEN v. THE STATE.

DILLARD, Judge.

Following trial, a jury convicted Erick Pedersen on one count of operating a moving vessel under the influence of alcohol to the extent that it was less safe for him to do so ("boating under the influence" or "BUI") and three counts of endangering a child by operating a moving vessel under the influence of alcohol. On appeal, Pedersen contends that the trial court erred in denying his motion to suppress the results of the field-sobriety tests, specifically arguing that he was in custody when the

tests were conducted for purposes of *Miranda v. Arizona*[1] and was not advised of his right against self-incrimination.[2] For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[3] the evidence shows that on May 5, 2012, an officer with the Georgia Department of Natural Resources ("DNR") was patrolling Lake Lanier well after sunset, when he observed a pontoon boat operating with its docking lights improperly illuminated such that its navigation lights were not clearly visible to other vessels.[4] Consequently, the DNR officer maneuvered his boat toward the pontoon boat and ordered its operator, Pedersen, to stop so that he could discuss the violation with him and conduct a brief safety inspection. Upon boarding Pedersen's boat, the officer observed that, in addition to Pedersen, there were several other passengers, including three children. And in

---

[1] 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[2] *See* U.S. CONST. amend. V (". . . nor shall any person . . . be compelled in any criminal case to be a witness against himself . . . ."); GA. CONST. art. 1, § 1, ¶16 ("No person shall be compelled to give testimony tending in any manner to be self-incriminating.").

[3] *See, e.g., Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

[4] *See* OCGA § 52-7-11 (b) (2).

2

speaking with Pedersen, the officer noticed that his eyes were red, his speech was somewhat slurred, and his balance was poor. The officer also smelled the odor of an alcoholic beverage emanating from Pedersen. As a result, the officer asked if he had been drinking, and Pedersen admitted to having two alcoholic beverages earlier that day.

At that point, the DNR officer asked Pedersen to don a life-vest and step onto the officer's vessel, so that the officer could conduct field-sobriety tests. Pedersen complied, and thereafter, the officer administered several field-sobriety tests, including the Horizontal Gaze Nystagmus (HGN) test, reciting the alphabet, counting to twenty forwards and backwards, and a finger dexterity test. Pedersen exhibited signs of impairment after each test, and when the portable alco-sensor test returned a positive result, the officer informed Pedersen that he was placing him under arrest for operating a vessel under the influence of alcohol. The officer then read Georgia's Implied Consent law, but Pedersen refused to take the state-administered breath test.

Following his arrest, the State charged Pedersen, via accusation, with one count of operating a moving water vessel under the influence of alcohol to the extent that it was less safe for him to do so ("BUI less safe"),[5] three counts of endangering a

_____

[5] *See* OCGA § 52-7-12 (a) (1).

child by operating a moving vessel or personal watercraft under the influence of alcohol,[6] and one count of operating a vessel without the required lights.[7] Not long thereafter, Pedersen filed a motion to suppress the evidence garnered as a result of the field-sobriety tests, arguing, *inter alia*, that he was in custody when the tests were conducted and, therefore, should have been advised of his rights under *Miranda* prior to being subjected to the tests. The State filed a response, and after holding an evidentiary hearing on the issue, in which only the DNR officer testified, the trial court denied Pedersen's motion.

Subsequently, the matter proceeded to a trial before a jury, in which the only evidence presented was the DNR officer's testimony and the audio/video recording of the officer's interaction with Pedersen that evening. And at the conclusion of the trial, the jury found Pedersen guilty on the charges for BUI less safe and endangering

---

[6] *See* OCGA § 52-7-12 (l).

[7] *See* OCGA § 52-7-11 (b) (2).

4

a child by operating a moving vessel or personal watercraft under the influence of alcohol. Pedersen then filed a motion for new trial, which the trial court also denied. This appeal follows.

At the outset, we note that when the facts material to a motion to suppress are disputed, "it is generally for the trial judge to resolve those disputes and determine the material facts."[8] This principle is well established, and our Supreme Court has identified "three corollaries of the principle, which limit the scope of review in appeals from a grant or denial of a motion to suppress in which the trial court has made express findings of disputed facts."[9] An appellate court generally must (1) accept a trial court's findings unless they are clearly erroneous,[10] (2) construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court,[11] and (3) limit its consideration of the disputed facts to those expressly found by the trial court.[12] However, we review *de novo* the trial court's "application

---

[8] *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015); *see also Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

[9] *Hughes*, 296 Ga. at 746 (1).

[10] *See id.*

[11] *See id.*

[12] *See id.*

of law to the undisputed facts."[13] With these guiding principles in mind, we turn now to Pedersen's claim of error.

As noted *supra*, Pedersen contends that the trial court erred in denying his motion to suppress the evidence garnered as a result of stopping his boat, arguing that he was in custody when the field-sobriety tests were conducted and, thus, should have been advised of his *Miranda* rights. We disagree.

In Georgia, it is well established that during the course of an investigation, a law-enforcement officer may temporarily detain an individual and that this type of detention does not normally trigger the protections of *Miranda*.[14] Indeed, with respect to a DUI investigation in particular, *Miranda* warnings are generally not required "while an investigating officer conducts preliminary questioning or field sobriety tests."[15] But once a DUI suspect is in custody, *Miranda* warnings must "precede

---

[13] *State v. Conner*, 322 Ga. App. 636, 637 (745 SE2d 837) (2013) (punctuation omitted).

[14] *See Tolliver v. State*, 273 Ga. 785, 786 (546 SE2d 525) (2001) ("[A] law enforcement officer coming upon the scene of suspected criminal activity will conduct a general on-the-scene investigation and may detain temporarily anyone at the scene. Such detentions do not trigger the requirements of *Miranda v. Arizona*." (punctuation omitted)); *Crider v. State*, 319 Ga. App. 567, 568 (737 SE2d 344) (2013) (same).

[15] *Crider*, 319 Ga. App. at 568 (punctuation omitted).

6

further field sobriety tests in order for evidence of the results to be admissible."[16] To that end, when analyzing whether a suspect is in custody, the relevant inquiry is "whether, under the circumstances, a reasonable person would conclude that his or her freedom of action was only temporarily curtailed and that a final determination of his or her status was merely delayed."[17] A reasonable person is "one neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances."[18] And importantly, a detained individual is "not under arrest simply because, by leaving, he could be arrested for violating state law."[19] In addition, the subjective belief of an officer that "he or she may have probable cause to arrest

---

[16] *Id.* (punctuation omitted).

[17] *Hale v. State*, 310 Ga. App. 363, 366 (1) (714 SE2d 19) (2011); *see also Price v. State*, 269 Ga. 222, 225 (3) (498 SE2d 262) (1998) ("The test of 'in custody' is whether a reasonable person in the suspect's position would have thought the detention would not be temporary." (punctuation omitted)).

[18] *Crider*, 319 Ga. App. at 569 (punctuation omitted).

[19] *State v. Mosley*, 321 Ga. App. 236, 238-39 (739 SE2d 106) (2013) (punctuation omitted).

a suspect is wholly irrelevant in the absence of an *overt step* to communicate that belief."[20] In fact, in the absence of an officer making a statement that

> would cause a reasonable person to believe that he was under arrest—as opposed to being temporarily detained—during an investigation, the officer's subjective belief that probable cause exists to make an arrest does not determine when the arrest is effectuated until the officer overtly acts so that a reasonable person would believe he was under arrest.[21]

Applying these principles to this matter, we conclude that the trial court did not err in finding that Pedersen was not in custody for purposes of *Miranda* at the time the field-sobriety tests were conducted. As previously noted, the DNR officer stopped the pontoon boat because he believed Pedersen was operating the boat at night with its docking lights improperly illuminated such that its navigation lights were not

---

[20] *Id.* at 239.

[21] *Id.* (punctuation omitted).

clearly visible to other vessels.[22] And during his brief safety inspection, the officer observed that Pedersen was possibly under the influence of alcohol.

Furthermore, although it is certainly true that Pedersen was not permitted to leave the DNR officer's vessel during the course of the field-sobriety tests, there is nothing in the officer's words, all of which were heard in the recording of the encounter, that would cause a reasonable person to conclude that Pedersen was more than temporarily detained pending the outcome of the investigation. In fact, at no time prior to the conclusion of the tests did the officer tell Pedersen that he was under arrest, and he never placed him in handcuffs. Given these particular circumstances, a reasonable person would conclude that the DNR officer was conducting field-sobriety testing for the very purpose of determining whether to take Pedersen into custody. And treatment of this nature cannot be fairly characterized as "the

---

[22] We note that, similar to a police officer who witnesses a traffic violation, under OCGA § 52-7-25 (b) (4), a DNR officer "shall have the power . . . [t]o board vessels in use, for purposes of examining any documents and safety equipment, and to search without warrant any vessel which is not at its regular mooring or berth when he believes that any law of this state or any rule or regulation of the Board of Natural Resources relating to boating has been violated[.]" *See Peruzzi v. State*, 275 Ga. 333, 334-35 (567 SE2d 15) (2002) (holding that statute permitting DNR rangers to stop boats without any suspicion in order to examine documents and safety equipment was reasonable and did not violate the Fourth Amendment).

9

functional equivalent of [a] formal arrest."[23] Accordingly, the trial court did not err in denying Pedersen's motion to suppress the results of the field-sobriety tests on the basis of a *Miranda* violation.

*Judgment affirmed. Phipps, P. J., and Peterson, J., concur.*

---

[23] *Tolliver*, 273 Ga. at 786 (punctuation omitted); *see also Mosley*, 321 Ga. App. at 239-40 (holding that defendant was not in custody for *Miranda* purposes when field-sobriety tests were conducted and when deputy responded in the negative to defendant's question of whether he was under arrest and never placed defendant in handcuffs or in the back of a patrol car during the questioning); *Appling v. State*, 320 Ga. App. 379, 381-82 (739 SE2d 816) (2013) (same); *Crider*, 319 Ga. App. at 569 (same).